UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER J. HIDALGO,           )
                           )
        Plaintiff,          )
                           )
        v.                  )        Civil No. 06-1513 (JR)
                           )
FEDERAL BUREAU OF           )
  INVESTIGATION,            )
                           )
        Defendant.          )
_____)

<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant, by its undersigned attorneys, hereby moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment on the grounds that no genuine issue of material fact exists and that defendant is therefore entitled to judgment as a matter of law.  In support of this motion, the Court is respectfully referred to the Declaration of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation, United States Department of Justice; to the Statement of Material Facts as to Which There is No Genuine

Issue; and to the Memorandum of Points and Authorities in Support

of Defendant's Motion for Summary Judgment, all filed herewith.

Respectfully submitted,

_____
JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney

_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney

_____/s/_____
Dated:  May 16, 2007        KENNETH A. HENDRICKS
                            Attorney-Advisor
                            Office of Information and Privacy
                            United States Department of Justice
                            1425 New York Ave., NW, Suite 11050
                            Washington, DC  20530-0001
                            (202) 514-0833

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
PETER J. HIDALGO,              )
                              )
       Plaintiff,             )
                              )
       v.                     )    Civil No. 06-1513 (JR)
                              )
FEDERAL BUREAU OF             )
  INVESTIGATION,              )
                              )
       Defendant.             )
_____)
```

STATEMENT OF MATERIAL FACTS AS TO WHICH THERE
IS NO GENUINE ISSUE, PURSUANT TO LOCAL RULE 7(h)

Pursuant to Local Rule 7(h), defendant submits the following statement of material facts as to which there is no genuine issue:

(1)  This case concerns plaintiff's request pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. IV 2004), for records concerning a third party, Manuel "Manny" Sanchez, who was a Federal Bureau of Investigation (FBI) confidential informant in an international drug trafficking investigation.  (See Declaration of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI, United States Department of Justice [hereinafter Hardy Decl.], filed herewith, ¶¶ 4, 8-9 & Ex. A.)

(2)  This case is related to two actions under the FOIA in this Court pursued by plaintiff:  Hidalgo v. FBI, No. 00-0709 (D.D.C. 2003)(JR); and Hidalgo v. FBI, No. 04-562 (D.D.C. 2006)(JR).

-2-

(3)  In the first case, No. 00-0079, plaintiff requested FBI Headquarters (FBIHQ) records about the informant.  The first case was dismissed without prejudice for failure to exhaust administrative remedies.  (See Order, filed Dec. 9, 2003.)

(4)  In the second case, No. 04-562, plaintiff again requested records about the informant from FBIHQ.  In that case, after the Court rejected defendant's "Glomar" invocation, (see Mem. Order, filed Sept. 29, 2005, at 3-5), the FBI found no responsive FBIHQ records.  Subsequently, the Court granted defendant's renewed motion for summary judgment, finding that the FBI's search for FBIHQ records was reasonable.  (See Mem., filed Sept. 22, 2006, at 2-3.)

(5)  By cover letter dated February 7, 2006, plaintiff's attorney submitted plaintiff's FOIA request dated February 3, 2006, to the Miami Field Office (MMFO) of the FBI for records concerning the third party who was an FBI confidential informant. (See Hardy Decl. ¶¶ 8-9 & Ex. A.)

(6)  By letter dated March 3, 2006, the FBI returned to plaintiff's counsel a copy of the request pertaining to the third-party informant, and asked for submission of proof of death of that third party.  Plaintiff's counsel was advised of the right to appeal to the United States Department of Justice, Office of Information and Privacy (OIP).  (See Hardy Decl. ¶ 10 & Ex. B.)

-3-

(7)  By letter dated April 26, 2006, to OIP, plaintiff's counsel appealed the denial of plaintiff's FOIA request.  (See Hardy Decl. ¶ 11 & Ex. C.)

(8)  Plaintiff commenced this action on August 28, 2006.

(9)  Defendant filed its Answer on October 2, 2006.

(10)  By letter dated October 27, 2006, the FBI acknowledged receipt of plaintiff's request to the MMFO, and assigned it FOIPA #1061364.  (See Hardy Decl. ¶ 13 & Ex. E.)

(11)  In a November 8, 2006 status conference, the parties agreed that the FBI would prepare the records for processing, process the records, and provide monthly reports directly to plaintiff, including the disclosure of nonexempt records processed at the time of each report.  The Court directed the FBI to provide its first written status report to the Court by March 16, 2007.

(12)  By letters to plaintiff dated December 8, 2006, January 9, 2007, February 13, 2007, March 8, 2007, and May 9, (see Def.'s Mem., filed herewith, Attach. B), the FBI reported on its progress in processing the responsive records.

(13)  By letter dated January 29, 2007, (see Def.'s Mem., filed herewith, Attach. A), the FBI disclosed one page in part, subject to withholdings under Exemptions 2, 6, and 7(C) of the FOIA, 5 U.S.C. § 552(b)(2), (6), and (7)(C).  (See Hardy Decl. ¶ 27.)

-4-

(14)  By letter dated December 11, 2006, OIP advised plaintiff's counsel that it was closing the administrative appeal since the case was in litigation.  (See id. ¶ 14 & Ex. F.)

(15)  On March 16, 2007, the FBI filed its status report with the Court.  In this report, the FBI reported that it had made its initial processing determinations for the records responsive to plaintiff's request, releasing one page on January 29, 2007; that it expected to complete its review soon thereafter of its initial determinations; and that it would disclose any additional nonexempt portions of records at that time.  Defendant also informed the Court that defendant had consulted with plaintiff's counsel regarding a proposed briefing schedule. (Id.)

(16)  Defendant withheld approximately 2992 pages in full pursuant to Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E), and 7(F) of the FOIA.  (See Hardy Decl. ¶ 27 & Def.'s Mem., Attachs. A-B.)

(17)  Defendant used Exemption 2 to withhold internal information on the funding of confidential informants, confidential source symbol numbers, informant file numbers, and telephone numbers of FBI personnel.  (See Hardy Decl. ¶¶ 28-36 & Def.'s Mem., Attachs. A-B.)

(18)  The FBI withheld all the responsive information in the file pursuant to Exemption 6 in conjunction with Exemption 7(C). (See Def.'s Mem., Attachs. A-B.)  The information so withheld

-5-

includes the details of the informant's participation in the
international drug trafficking investigation, (see Hardy Decl.
¶¶ 38, 50); names, identifying information, and telephone numbers
of FBI Special Agents and personnel, (see id. ¶¶ 40, 52); and
names and identifying information of third parties mentioned in
the records responsive to plaintiff's request, including third
parties merely mentioned, those who provided information to the
FBI, and persons of investigative interest to the FBI mentioned
in the informant's file.  (See id.)

        (19)  The FBI withheld information pursuant to five
subsections of Exemption 7.  (See Def.'s Mem., Attachs. A-B.)  In
this case, the records withheld pursuant to Exemption 7 were
compiled for criminal law enforcement purposes during the FBI's
international drug trafficking investigation.  (See Hardy Decl.
¶ 41.)

        (20)  The FBI withheld all the responsive records pursuant
to Exemption 7(A). (See id. ¶¶ 27, 44-48 & Def.'s Mem., Attachs.
A-B.)  The information so withheld includes informant contact and
interview documents, (see Hardy Decl. ¶ 47); informant funding
documents, (see id. ¶ 48); and internal FBI informant control
documents.  (See id.)

        (21)  The FBI withheld all the responsive records pursuant
to Exemption 7(C) in conjunction with Exemption 6.  (See Def.'s
Mem., Attachs. A-B.)  The information so withheld includes the

-6-

details of the informant's participation in the international
drug trafficking investigation, (see Hardy Decl. ¶¶ 38, 50);
names, identifying information, and telephone numbers of FBI
Special Agents and personnel, (see id. ¶¶ 40, 52); and names and
identifying information of third parties mentioned in the records
responsive to plaintiff's request, including third parties merely
mentioned, those who provided information to the FBI, and persons
of investigative interest to the FBI mentioned in the informant's
file. (See id.)

(22) The FBI withheld information pursuant to Exemption
7(D). (See Def.'s Mem., Attachs. A-B.) This withheld
information consists of information that the informant provided
to the FBI under express promises of confidentiality. (See Hardy
Decl. ¶ 54.) The withheld information also includes confidential
source symbol numbers and informant file numbers. (See id.
¶¶ 53-55.)

(23) The FBI withheld information pursuant to Exemption
7(E). (See Def.'s Mem., Attachs. A-B.) This withheld
information concerns techniques and procedures regarding the
funding of the informant used by the FBI during the international
drug trafficking investigation. (See Hardy Decl. ¶ 57.)

(24) The FBI withheld information from plaintiff pursuant
to Exemption 7(F), (see Def's Mem., Attachs. A-B), as disclosure
of this information would endanger the life of the informant, the

-7-

lives of his family members, and the lives of third-party associates or acquaintances of the informant who are merely mentioned in the file.  (<u>See</u> Hardy Decl. ¶¶ 59-60.)

(25)  The FBI conducted an extensive review of the withheld material to ascertain whether any releaseable material could be segregated out from protected material and released to plaintiff, and determined that no additional information could be released without risking the harms outlined in the above paragraphs concerning the various FOIA exemptions that were the basis of the agency withholdings.  (<u>See</u> Hardy Decl. ¶ 61.)

Respectfully submitted,

_____
JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney

_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney

_____/s/_____
Dated:  May 16, 2007    KENNETH A. HENDRICKS
Attorney-Advisor
Office of Information and Privacy
United States Department of Justice
1425 New York Ave., NW, Suite 11050
Washington, DC  20530-0001
(202) 514-0833

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER J. HIDALGO,                  )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )        Civil No. 06-1513 (JR)
                                   )
FEDERAL BUREAU OF                  )
  INVESTIGATION,                   )
                                   )
        Defendant.                 )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff commenced this action on August 28, 2006, pursuant
to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 &
Supp. IV 2004), seeking access to records concerning former
Federal Bureau of Investigation (FBI) confidential informant
Manuel ("Manny") Sanchez that are maintained by the Miami Field
Office (MMFO) of the FBI.[1]  Defendant filed its Answer on October
2, 2006.

In support of its motion for summary judgment, defendant has
filed herewith the Declaration of David M. Hardy, Section Chief of
the Record/Information Dissemination Section, Records Management
Division, FBI, United States Department of Justice, [hereinafter
Hardy Declaration].  This declaration details the chronology of
correspondence related to plaintiff's request, describes the

---

[1] Only the Department of Justice, and not the FBI, is a
proper party defendant to this action.  See 5 U.S.C.
§ 552(a)(4)(B); Judicial Watch, Inc. v. FBI, 190 F. Supp. 2d 29,
31 n.1 (D.D.C. 2002); Peralta v. U.S. Attorney's Office, 69 F.
Supp. 2d 21, 30-31, 35-36 (D.D.C. 1999).

-2-

searches the FBI conducted for responsive records, discusses the one
document that was partially released, itemizes the remaining
documents that were withheld in full, and explains the bases upon
which information was withheld pursuant to Exemptions 2, 6, 7(A),
7(C), 7(D), 7(E), and 7(F) of the FOIA, 5 U.S.C. § 552(b)(2),
(6), 7(A), 7(C), 7(D), 7(E), and 7(F).

Based upon this declaration and the entire record herein, and
for the reasons set forth below, the FBI respectfully submits that
there exists no genuine issue of material fact and that it is
entitled to judgment as a matter of law pursuant to Rule 56 of the
Federal Rules of Civil Procedure.

<u>Factual and Procedural Background</u>

The records responsive to plaintiff's request consist of the
confidential informant file of Manny Sanchez. (<u>See</u> Hardy Decl.
¶ 21.) This file relates to a pending international drug
trafficking investigation in which Manny Sanchez participated as a
confidential informant for the FBI. (<u>See</u> <u>id.</u> ¶ 4.) Though the
informant testified in several trials for the federal government
that resulted from this investigation, those trials do not
represent the totality of the informant's work. (<u>See</u> <u>id.</u> ¶¶ 4-
5.) The information in the confidential informant file also
relates to investigative matters beyond the trials in which the
informant testified. (<u>See</u> <u>id.</u> ¶ 4.)

-3-

Related Prior Litigation

This is plaintiff's third FOIA lawsuit attempting to obtain
access to the FBI's records concerning the informant.  (See id.
¶ 3, n.1.)  In the first case, Hidalgo v. FBI, No. 00-0079 (JR)
(D.D.C.), plaintiff requested records about the informant from
FBI Headquarters (FBIHQ).  (See id. ¶ 3, n.1.)  That case was
dismissed without prejudice for failure to exhaust administrative
remedies.  (See Hardy Decl. ¶ 3, n.1.)

In the second case, Hidalgo v. FBI, No. 04-562 (JR) (D.D.C.)
("Hidalgo II"), plaintiff requested records about the informant
from FBIHQ.  (See Hardy Decl. ¶ 3, n.1.)  In that case, the Court
rejected defendant's "Glomar"[2] invocation and ordered the FBI to
"demonstrate that it has searched its records and . . . either
provide the documents requested or produce a Vaughn index."
(Mem. Order, filed Sept. 29, 2005, at 6.)  In Hidalgo II, the
Court also stated that conventional invocations of Exemptions
7(C) and 7(D) "will suffice to protect whatever privacy interest
may exist outside the 'context' of Sanchez's known status as an
informant."  (Order, filed Oct. 25, 2005.)  Subsequently in
Hidalgo II, the FBI conducted a search, but could not locate
FBIHQ records responsive to plaintiff's request.  (See Hardy

_____

[2] This term stems from the case of Phillippi v. CIA, 546
F.2d 1009 (D.C. Cir. 1976), which concerned a request for records
about the Glomar Explorer (a ship allegedly used by the CIA) in
response to which the CIA refused to confirm or deny the
existence of responsive records.

-4-

Decl. ¶ 3, n.1.)  Thereafter, the Court granted the government's
renewed motion for summary judgment, finding that the FBI
demonstrated that it had conducted a reasonable search for
records at FBIHQ.  (Mem., filed Sept. 22, 2006, at 2-3.)

Plaintiff's Request in This Litigation

By cover letter dated February 7, 2006, plaintiff's attorney
submitted plaintiff's FOIA request dated February 3, 2006, to the
FBI's MMFO for access to all records concerning the informant, a
third party.  (See Hardy Decl. ¶¶ 8-9 & Ex. A.)  By letter dated
March 3, 2006, the FBI informed plaintiff that without proof of
death, it would not release records related to a third party, and
that if such records existed, they would be exempt from
disclosure pursuant to Exemptions 6 and/or 7(C), 5 U.S.C. §
552(b)(6), (7)(C).  (See Hardy Decl. ¶ 10 & Ex. B.)  By letter
dated April 26, 2006, plaintiff's attorney administratively
appealed the FBI's action to OIP.  (See id. ¶ 11 & Ex. C.)  By
letter dated May 9, 2006, OIP acknowledged receipt of the appeal,
and informed plaintiff of its backlog of administrative appeals.
(See id. ¶ 12 & Ex. D.)  Plaintiff commenced this action on
August 28, 2006.  By letter dated October 27, 2006, defendant
acknowledged receipt of plaintiff's request, and assigned it
Request No. 1061364.  (See id. ¶ 13 & Ex. E.)  By letter dated
December 11, 2006, OIP informed plaintiff's counsel that it was
closing the appeal since the case was in litigation.  (See id.

-5-

¶ 14 & Ex. F.)  The FBI also conducted a search and located a responsive confidential informant file in the MMFO consisting of approximately 2993 pages.  (See id. ¶ 21.)

By letters to plaintiff dated December 8, 2006, January 9, 2007, February 13, 2007, and March 8, 2007, defendant reported on its progress in processing the responsive records.  By letter dated January 29, 2007, (copy attached hereto as Attach. A), the FBI partially disclosed one page, subject to withholdings under Exemptions 2, 6, and 7(C) of the FOIA, 5 U.S.C. § 552(b)(2), (6), and (7)(C), (see Hardy Decl. ¶ 27.)  By letter dated May 9, 2007, (copy attached hereto as Attach. B.), the FBI informed plaintiff that the FBI was withholding the remainder of the responsive records in full pursuant to Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E), and 7(F) of the FOIA.

In sum, the FBI conducted a search of the MMFO, it located approximately 2293 responsive pages that comprise a confidential informant file, and it processed those pages for release determinations.  (See id. ¶ 22.)  The FBI partially released one page, withholding from that page some information pursuant to Exemptions 2, 6, and 7(C) of the FOIA.  (See id. ¶ 7.)  The FBI withheld the remaining 2992 pages in their entireties pursuant to Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E), and 7(F) of the FOIA. (See id. ¶ 27 & Ex. G.)

-6-

Argument

SUMMARY JUDGMENT FOR DEFENDANT IS PROPER INASMUCH AS
NO INFORMATION HAS BEEN IMPROPERLY WITHHELD FROM PLAINTIFF

The FBI's declaration fully responds to plaintiff's claims
in this action and, in accordance with the statutory requirements
of the FOIA and the requirements of Vaughn v. Rosen, 484 F.2d
820, 827 (D.C. Cir. 1973), contains complete descriptions of, and
justifications for, all of the information withheld by defendant
pursuant to Exemptions 2, 6, 7(A), 7(C), 7(D), 7(E), and 7(F) of
the FOIA.  As defendant will demonstrate below, the invocation of
each of these exemptions was proper and entirely justified under
the law.

        I.    Pursuant to 5 U.S.C. § 552(b)(2), the
              FBI Properly Withheld Information Related
              Solely to the Internal Personnel Rules and
              Practices of the Agency

Exemption 2 of the FOIA exempts from mandatory disclosure
material "related solely to the internal personnel rules and
practices of an agency." 5 U.S.C. § 552(b)(2).  The courts have
interpreted the exemption to encompass two distinct categories of
information:  (a) internal matters of a relatively trivial
nature, often referred to as "low 2" information, see, e.g.,
Dep't of the Air Force v. Rose, 425 U.S. 352, 369-70 (1976); and
(b) more substantial internal matters the disclosure of which
would risk circumvention of a legal requirement, often referred
to as "high 2" information, see, e.g., Crooker v. ATF, 670 F.2d

-7-

1051, 1074 (D.C. Cir. 1981) (en banc).  This case involves "high 2" information.

With regard to "high 2" information, the Court of Appeals for the District of Columbia Circuit has found information protected from disclosure if that information is "predominantly internal" and that, if disclosed, could "significantly risk[] circumvention of agency regulations or statutes." Crooker, 670 F.2d at 1074.  In this case, the FBI withheld three different categories of "high 2" information pursuant to Exemption 2:  (1) information related to the funding of a confidential informant; (2) permanent source symbol numbers, informant file numbers, and investigative file numbers; and (3) telephone numbers of FBI personnel.[3]  (See Hardy Decl. ¶¶ 28-36.)

The FBI withheld the first category of information pursuant to Exemption 2.  (See id. ¶ 30.)  This category consists of internal administrative information related to the FBI's funding of a confidential informant as part of an international drug trafficking investigation.  (See id. ¶¶ 4, 30.)  Release of this information to the public "would give drug traffickers insight into the financial workings of the confidential informant

_____

[3] As is detailed below, some of the information on the funding of the confidential informant is also being withheld pursuant to Exemption 7(E); the source symbol numbers and informant file numbers are also being withheld pursuant to Exemption 7(D); and the phone numbers of FBI personnel are also being withheld pursuant to Exemptions 6 and 7(C).

-8-

program." (Id. ¶ 30.) Such insight "would be harmful because armed with knowledge of the inner workings of the financial operations of the confidential informant program, drug traffickers could scheme in an attempt to circumvent laws and investigations related to enforcement actions against international drug trafficking through manipulation of the confidential informant program." (Id.) Disclosure of this information also "could impede the FBI's effectiveness in administering its operations" because it could allow someone to "exhaust the FBI's funding of a particular investigation." (Id.) This is the type of information that is protected by Exemption 2. See, e.g., Crooker, 670 F.2d at 1074; Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997) (pointing out deference properly accorded law enforcement activities).

In particular, Exemption 2 protection has been accorded to investigation funding information that is internal to the FBI where disclosure would impede FBI effectiveness in using confidential informants. See, e.g., Peay v. Dep't of Justice, et. al., No. 04-1859, 2007 WL 788871, at *2 (D.D.C. Mar. 14, 2007) (concluding that FBI properly withheld under Exemption 2 funding information related to an investigation featuring an informant (citing Crooker, 670 F.2d at 1073-74)); Russell v. FBI, No. 03-0611, slip op. at 8 (D.D.C. Jan. 9, 2004) (finding that the FBI properly withheld under Exemption 2 information on the

-9-

funding of undercover operations because disclosure "would impede
the effectiveness of the FBI's internal law enforcement
procedures") (copy attached hereto as Attach. C), <u>summary
affirmance granted sub nom.</u> <u>Russell v. Dep't of Justice</u>, No. 04-
5036, 2004 WL 1701044 (D.C. Cir. July 29, 2004).  Accordingly,
the FBI properly withheld under Exemption 2 information related
to the funding of the confidential informant in this case.

     The FBI also withheld a second category of information
pursuant to Exemption 2, which includes permanent source symbol
numbers, informant file numbers, and investigatory file numbers.
(<u>See</u> Hardy Decl. ¶ 31.)  Permanent source symbol numbers identify
certain sensitive confidential informants who have provided
information to the FBI under an express grant of confidentiality.
(<u>See</u> <u>id.</u> ¶ 32.)  As explained in the Hardy Declaration, FBI
permanent source symbol numbers include an FBI field office
designation as well as a sequentially assigned number that is
used to identify a particular informant.  (<u>See</u> <u>id.</u> ¶ 32.)  The
permanent source symbol number is used in all FBI written reports
in which the particular source provided information; thus, if the
permanent source symbol number were released, it would become
known every time a particular informant provided information.
(<u>See</u> <u>id.</u> ¶ 32.)  Additionally, because of the field office
identifier and the use of sequentially assigned numbers, release
of this information would indicate the extent of FBI informant

-10-

presence within a particular geographical area.  (See id. ¶ 32.)

Also within the second category of information withheld by the FBI pursuant to Exemption 2 are confidential source file numbers and investigative file numbers.  (See id. ¶ 31.) Confidential source file numbers are "assigned in sequential order to confidential informants who report information to the FBI on a regular basis pursuant to an express assurance of confidentiality."  (Id. ¶ 33.)  Release of "the confidential file number in this case where the name of the source is known could have a chilling effect on the activities and cooperation of other FBI confidential informants."  (Id.)  Thus, as the Declarant explains, protection of these informant file numbers is "essential to maintaining the integrity of the FBI's confidential source program."  (Id. ¶ 36.)

FBI investigatory file numbers are internal numbers that "designate files that serve as repositories for the FBI's law enforcement data."  (Id. ¶ 34.)  The responsive file numbers in this case pertain to the "details of investigations of international drug traffickers."  (Id.)  Protection of this information, therefore, is essential, as "[d]isclosure of the investigatory file numbers could provide a means of access to this information for the purpose of obstructing the FBI's investigation."  (Id.)

-11-

Courts have found that source symbol numbers, informant file numbers, and investigatory file numbers are properly withheld pursuant to Exemption 2.  See, e.g., Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993) (holding that Exemption 2 applies to informant symbol numbers and file numbers); Mack v. Dep't of the Navy, 259 F. Supp. 2d 99, 107 n.3 (D.D.C. 2003) (finding cooperating witness identification numbers to be "strictly internal and . . . sensitive because they conceal the identity of informants who were promised confidentiality in exchange for their cooperation"); Palacio v. U.S. Dep't of Justice, No. 00-1564, 2002 U.S. Dist. LEXIS 2198, at *15 (D.D.C. Feb. 11, 2002) (holding that FBI informant codes were properly withheld because "[t]he means by which the FBI refers to informants . . . is a matter of internal significance in which the public has no substantial interest" and "disclosure of the informant codes may . . . harm the FBI's legitimate investigative activities"), summary affirmance granted, No. 02-5247, 2003 U.S. App. LEXIS 1804 (D.C. Cir. Jan. 31, 2003); Shores v. FBI, 185 F. Supp. 2d 77, 83 (D.D.C. 2002) (recognizing that disclosing "informant symbol and file numbers," and thereby "compromising the identities of government informants," readily "could deter individuals from cooperating with the government"); Coleman v. FBI, 13 F. Supp. 2d 75, 79 (D.D.C. 1998) (protecting FBI source symbol numbers and file numbers as "high 2" information, because

-12-

disclosure could allow "criminals to redirect their activities
[to] avoid legal intervention").  Accordingly, the FBI properly
withheld permanent symbol source numbers, informant file numbers,
and investigatory file numbers in this case under Exemption 2.

The FBI also has withheld a third category of information,
the telephone numbers of FBI personnel, pursuant to Exemption 2.
(See Hardy Decl. ¶ 35.)  Release of this information could
subject FBI personnel to harassing phone calls, thereby
disrupting official business.  (See id. ¶ 35.)  The courts have
found that the internal telephone numbers of FBI personnel are
properly withheld pursuant to Exemption 2.  See, e.g., Truesdale
v. U.S. Dep't of Justice, No. 03-1332, 2005 WL 3294004, at *5
(D.D.C. Dec. 5, 2005) (protecting FBI Special Agents' telephone
and facsimile numbers, because disclosure "would disrupt official
business and could subject the FBI's employees to harassing
telephone calls"); Queen v. Gonzales, No. 96-1387, 2005 WL
3204160, at *4 (D.D.C. Nov. 15, 2005) (finding that internal
facsimile numbers of FBI Special Agents and support personnel
involved in plaintiff's narcotics investigation were properly
withheld).  Because these phone numbers are related to FBI
internal practices, and because their disclosure would impede FBI
effectiveness, this information was properly withheld pursuant to
Exemption 2.

-13-

II.  Pursuant to 5 U.S.C. § 552(b)(6), the FBI
     Properly Withheld Information the Disclosure
     of Which Would Constitute a Clearly Unwarranted
     Invasion of Personal Privacy

Exemption 6 of the FOIA allows the withholding of records

which are contained within "personnel and medical files and

similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

If an agency wishes to make use of this exemption, it must first

establish that the records in question qualify as "personnel and

medical files and similar files," and then it must balance the

privacy interest (if any) of those identified in the records in

question against the public interest in disclosure (if any).

The term "similar files" is to be considered broadly.  See

U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 601 (1982)

(stating that the protection of an individual's privacy "surely

was not intended to turn upon the label of the file which

contains the damaging information"); Judicial Watch, Inc. v. FDA,

449 F.3d 141, 152 (D.C. Cir. 2006) ("[t]he Supreme Court has read

Exemption 6 broadly").  All information that "applies to a

particular individual" meets the threshold requirement for

Exemption 6 protection.  Wash. Post, 456 U.S. at 602 ("When

disclosure of information which applies to a particular

individual is sought . . . courts must determine whether release

of the information would constitute a clearly unwarranted

invasion of that person's privacy."); Balderrama v. DHS, No. 04-

-14-

1617, 2006 WL 889778, at *9 (D.D.C. 2006) (quoting Wash. Post,
456 U.S. at 602).

The information in the responsive file applies to the
informant and his undercover activity in a drug trafficking
investigation, to FBI Special Agents, to other FBI employees, and
to other third parties.  (See Hardy Decl. ¶¶ 4, 40.)
Accordingly, the information in the informant's file meets the
broad "similar files" test established by the Supreme Court.  See
Wash. Post, 456 U.S. at 602; see also Balderrama, 2006 WL 889778,
at *9 (stating that information meets the Exemption 6 threshold
if it is information that is "identifiable by an individual's
name or an identifier applying to a particular individual").

The next step in the Exemption 6 analysis is the balancing
of the privacy interests and the public interest.  In striking
this balance, agencies are guided by the Supreme Court's decision
in Department of Justice v. Reporters Committee for Freedom of
the Press, 489 U.S. 749 (1989).  There, the Supreme Court ruled
that the scope of the "public interest" to be considered under
the FOIA's privacy exemptions is limited to "the kind of public
interest for which Congress enacted the FOIA."  489 U.S. at 774.
This "core purpose of the FOIA," as the Court termed it, 489 U.S.
at 775, is to "shed[] light on an agency's performance of its
statutory duties," id. at 773.  Such a public interest purpose,
the Court stressed, "is not fostered by disclosure of information

-15-

about private citizens that is accumulated in various
governmental files but that reveals little or nothing about an
agency's own conduct."  Id.  Although Reporters Committee
concerned Exemption 7(C), the Supreme Court's analysis of the
basic balancing process in that case has been held to apply to
Exemption 6 as well.  See Reed v. NLRB, 927 F.2d 1249, 1251-52
(D.C. Cir. 1991); Nat'l Ass'n of Retired Fed. Employees v.
Horner, 879 F.2d 873, 875-79 (D.C. Cir. 1989) [hereinafter
NARFE].

    The FBI used "Exemption 6 in conjunction with Exemption 7(C)
to protect all the information in the informant file."  (See
Hardy Decl. ¶ 38.)  The FBI protected the entirety of the file
under these exemptions because the file is that of a third party,
the informant.  The informant in this case has a significant
privacy interest in the details of his participation in the
undercover drug trafficking investigation.  (See id.)  The drug
trafficking investigation in which he served as a confidential
informant remains open.  (See id. ¶ 4.)  As a result of this
undercover investigation, some drug traffickers were indicted and
convicted, and some remain fugitives.  (See id.)  The
investigation also developed evidence against other unindicted
drug traffickers.  (See id.)

    As the Declarant states, revealing the details of the
informant's participation "would expose [him] and his family to

-16-

retaliation at the hands of the drug traffickers who learn that
they were under the scrutiny of the FBI." (Id. ¶ 38.)  In
analyzing the weight of the informant's significant privacy
interest, the FBI "considered the Court's finding in Hidalgo II
that the plaintiff made a 'not overwhelming' showing of public
interest in knowing whether the FBI maintained records on [the
informant]." (Id. ¶ 39.)  In the present case, the FBI has
acknowledged that it maintains records on this informant.  (See
id. ¶¶ 7, 21-22.)  By this acknowledgment, that "not
overwhelming" public interest has been satisfied.  On the
question of disclosure of these records, however, the informant's
"significant personal privacy interests in preventing retaliation
against himself and his family," (id. ¶ 38), far outweigh the
post-acknowledgment residue of public interest (if any) that
might exist in this case.  See, e.g., Judicial Watch, Inc. v.
FDA, 407 F. Supp. 2d 70, 76-77 (D.D.C. 2005) (approving use of
Exemption 6 when agency withheld information to assure
individuals' safety), aff'd in pertinent part, 449 F.3d 141, 152-
154 (D.C. Cir. 2006).

    In Balderrama v. DHS, the court approved the use of
Exemptions 6 and 7(C) to protect identities of "witnesses,
undercover officers, [and] informants," because those individuals
"maintain a substantial privacy interest in not being identified
with law enforcement proceedings."  2006 WL 889778, at *9.  The

-17-

court also stated that those individuals "could be subjected to harassment and retaliation." Id.  In this case, disclosing any information from the informant's file would inherently identify the informant in relation to the law enforcement information disclosed.  The informant in this case has a substantial privacy interest in the nondisclosure of the nature and extent of his involvement with the FBI.  Accordingly, the FBI properly withheld the informant's file in its entirety.

In addition to information pertaining to the informant, the FBI withheld under Exemption 6:  (1) names and contact information of FBI Special Agents and FBI employees; (2) names and identifying information of third parties of investigative interest or who provided information to the FBI; and (3) names and identifying information of third parties merely mentioned in the responsive documents.  (See Hardy Decl. ¶ 40.)

First, the FBI withheld the names and contact information for FBI personnel, because the subjects of a Special Agent's investigations may well carry grudges against the agent in question.  (See id. ¶ 40.)  As a result, FBI Special Agents, and even support personnel, may become the target of harassment and unauthorized inquiries if their names or contact information are released.  (See id.)  Because of this, FBI Special Agents and support personnel have substantial privacy interests at stake in protecting their identities and contact information.  (See id.)

-18-

Further, the FBI determined that there is no discernable public interest at stake in identifying these individuals.  (See id.) Accordingly, the balance of interests weighs against disclosure. See, e.g., Voinche v. FBI, 412 F. Supp. 2d 60, 67-69 (D.D.C. 2006) (approving use of Exemptions 6 and 7(C) to protect names and contact information of FBI Special Agents and names of other FBI employees), summary judgment granted, 425 F. Supp. 2d 134 (D.D.C. 2006), summary affirmance granted, 2007 WL 1234984, at 1 (D.C. Cir. Feb. 27, 2007), reh'g denied (Mar. 30, 2007); Edmonds v. FBI, 272 F. Supp. 2d 35, 52 (D.D.C. 2003) (approving use of Exemptions 6 and 7(C) to protect identities of FBI Special Agents and other employees).  But see Leadership Conference on Civil Rights v. Gonzales, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (finding that names and work telephone numbers of agency paralegals do not meet the threshold for Exemption 6 because they are not "similar to a 'personnel' or 'medical' file").

Second, the FBI used Exemption 6 to protect the identities of third parties mentioned in these records in whom the FBI had an investigative interest.  Third, the FBI withheld the identities of third parties merely mentioned in the informant's file.  (See Hardy Decl. ¶ 40.)  The mere association of one's name with a law enforcement matter could at a minimum cause "unsolicited and unnecessary attention to be focused on them." (Id.)  In both of these instances, these third parties hold

-19-

privacy interests worthy of protection.  See, e.g., Horowitz v. Peace Corps, 428 F.3d 271, 279 (D.C. Cir. 2005) (recognizing that "[e]ven seemingly innocuous information can be enough to trigger the protections of Exemption 6"), cert. denied, 126 S. Ct. 1627 (2006); Appleton v. FDA, 451 F. Supp. 2d 129, 145 (D.D.C. 2006) (stating that "[i]ndividuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature").  Accordingly, the third parties mentioned in the informant's file maintain strong privacy interests in protecting from release their information in the responsive file.

In sum, the informant's personal privacy interests in not having records from his file disclosed outweigh any post-acknowledgment residue of public interest (if any exists), and no public interest (as defined by Reporters Committee) would be served by actual release of the information at issue.  In addition, disclosing this information would violate substantial privacy interests of numerous other third parties mentioned in these law enforcement records.  Accordingly, defendant respectfully submits that it properly applied Exemption 6.  See NARFE, 879 F.2d at 879 ("We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time.").

-20-

III. Pursuant to 5 U.S.C. § 552(b)(7), the FBI
     Properly Withheld Records or Information
     Compiled for Law Enforcement Purposes,
     the Release of Which Could Reasonably be
     Expected to Cause Certain Enumerated Harms

Exemption 7 of the FOIA protects from mandatory disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records" could reasonably be expected to cause the types of harm enumerated in the six subsections of this Exemption, 5 U.S.C. § 552(b)(7)(A)-(F). To properly invoke Exemption 7, an agency must initially demonstrate that the records were compiled for law enforcement purposes. See 5 U.S.C. § 552(b)(7); John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989); see also Quiñon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996). To satisfy this threshold requirement, an agency must show that the records were generated for the purpose of enforcing matters of civil, criminal, or administrative law. See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 77 (D.C. Cir. 2003).

The FBI withheld the informant records at issue pursuant to five of the Exemption 7 subcategories, Exemptions 7(A), 7(C), 7(D), 7(E), and 7(F). These informant records are part of a pending international drug trafficking investigation. (See id. ¶ 4.) Investigations such as this are fully part of the FBI's law enforcement mission. (See id. ¶¶ 4, 41.) As a result, under the standards discussed above, it is clear that these records satisfy

-21-

the Exemption 7 threshold.  See, e.g., Ray v. FBI, 441 F. Supp.
2d 27, 34 (D.D.C. 2006) (finding that FBI records compiled to
"battle drug trafficking" meet Exemption 7 threshold).  The FBI's
use of each of the five subcategories will be explained in turn.

> A.    Pursuant to 5 U.S.C. § 552(b)(7)(A), the FBI
>        Properly Withheld Information the Release of
>        Which Could Reasonably be Expected to Interfere
>        With Enforcement Proceedings

Having established that the confidential informant records
at issue were compiled for law enforcement purposes, the only
remaining consideration under Exemption 7(A) is whether their
release "could reasonably be expected to interfere with
enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  As the
Supreme Court has stated in discussing this exemption, "release
of information in investigatory files prior to the completion of
an actual, contemplated enforcement proceeding was precisely the
kind of interference that Congress continued to want to protect
against."  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 232
(1978); see also Mapother v. Dep't of Justice, 3 F.3d 1533, 1541
(D.C. Cir. 1993) (purpose of exemption is "to avoid prejudice to
a prospective enforcement action").

To invoke Exemption 7(A), the FBI must show that a law
enforcement proceeding is pending or prospective and that the
release of information about it could reasonably be expected to
cause some articulable harm.  See Bevis v. Dep't of State, 801
F.2d 1386, 1388 (D.C. Cir. 1986); Campbell v. HHS, 682 F.2d 256,

-22-

259 (D.C. Cir. 1982); Long v. U.S. Dep't of Justice, 450 F. Supp.

2d 42, 73 (D.D.C. Sept. 8, 2006); Scheer v. U.S. Dep't of

Justice, 35 F. Supp. 2d 9, 13 (D.D.C. 1999), appeal dismissed per

stipulation, No. 99-5317 (D.C. Cir. Nov. 2, 2000).

In this instance, the FBI determined that the investigation,

which is open but presently dormant, remains pending and is

assigned to a Special Agent.  (See Hardy Decl. ¶ 4.)

It should be noted that Exemption 7(A) protection has been

accorded to lengthy or even dormant investigations.  See, e.g.,

Cook v. U.S. Dep't of Justice, No 04-2542, 2005 WL 2237615, at *2

(W.D. Wash. Sept. 13, 2005) (approving use of Exemption 7(A) to

protect from disclosure file related to unsolved crime nearly 35

years old); Antonelli v. U.S. Parole Comm'n, No. 93-0109, slip

op. at 3-4 (D.D.C. Feb 23, 1996) (reiterating that courts

repeatedly find "lengthy, delayed, or even dormant

investigations" covered by Exemption 7(A), and holding that

release of eight-year-old investigative file "would interfere

with possible proceedings") (copy attached hereto as Attach. D.);

Butler v. U.S. Dep't of Justice, No. 86-2255, 1994 WL 55621, at

*4 (D.D.C. Feb. 3, 1994) (finding that Exemption 7(A) protects

from disclosure records related to an indicted fugitive who had

been "at large" for several years), appeal dismissed voluntarily,

No. 94-5078 (D.C. Cir. Sept. 8, 1994); Nat'l Pub. Radio v. Bell,

431 F. Supp. 509, 514-15 (D.D.C. 1977) (finding that Exemption

-23-

7(A) protects from disclosure records related to a dormant investigation without an assigned investigative agent, where disclosure "presents the very real possibility of a criminal learning in alarming detail of the government's investigation of his crime before the government has had the opportunity to bring him to justice").

In this case, some subjects of the drug trafficking investigation have been indicted and are fugitives. (See Hardy Decl. ¶ 4.) Enforcement proceedings are pending against specific indicted fugitive drug traffickers, and are prospective as to some unindicted drug traffickers. (See id.) Accordingly, the FBI properly determined that the responsive file relates to enforcement proceedings that are pending and prospective, and has properly withheld the entire informant file pursuant to Exemption 7(A).

In support of its invocation of Exemption 7(A), the FBI also articulated the types of harm that could result from the disclosure of the different categories of information in this file. (See id. ¶ 47.) As the FBI's declarant attests, release of the information in this file could reasonably be expected to lead to the following harms:

> a. The identification of individuals, sources, and potential witnesses who possess information relative to the investigation and possible harm to, or intimidation of these individuals, sources, and potential witnesses;
>
> b.  The pre-mature disclosure of evidence developed

-24-

against drug traffickers;

c.  The use of the information released to evade
prosecution or counteract evidence developed by
investigators;

d.  The identification of unindicted drug traffickers
of investigative interest; and

e.  The destruction of evidence.

(Id.)  A number of courts have readily concluded that disclosure
of information pertaining to the scope and focus of a pending
investigation to the target of that investigation would defeat
the important interests protected by Exemption 7(A) by
prematurely revealing the government's case.  See, e.g., Ctr. For
Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 928
(D.C. Cir. 2003) (holding that disclosure "could reveal much
about the focus and scope" of the investigation "and are thus
precisely the sort of information exemption 7(A) allows an agency
to keep secret" (quoting Swan v. SEC, 96 F.3d 498, 500 (D.C. Cir.
1996))); Judicial Watch v. U.S. Dep't of Justice, 306 F. Supp. 2d
58, 75 (D.D.C. 2004) (finding that release could reveal status of
investigation and agency's assessment of evidence).

The disclosure of the informant records in this case could
reasonably be expected to result in the very harms to enforcement
proceedings against which Exemption 7 is designed to protect.
Accordingly, defendant respectfully suggests that it properly
invoked Exemption 7(A) to withhold the responsive information.

-25-

B. Pursuant to 5 U.S.C. § 552(b)(7)(C), the FBI
   Properly Withheld Information the Release of
   Which Could Reasonably be Expected to Constitute
   an Unwarranted Invasion of Personal Privacy

Exemption 7(C) of the FOIA protects from disclosure "records
or information compiled for law enforcement purposes, but only to
the extent that the production of such law enforcement records or
information . . . (C) could reasonably be expected to constitute
an unwarranted invasion of personal privacy."  5 U.S.C.
§ 552(b)(7)(C).  Use of this exemption, like Exemption 6,
requires an agency to balance the privacy interests of the
individuals mentioned in the records (if any) against the public
interest in disclosure (if any).

Exemption 7(C) and Exemption 6 overlap one another, but the
agency bears a lesser burden for withholding under Exemption 7(C)
than under Exemption 6.  See Voinche, 412 F. Supp. 2d at 68.  In
Voinche, the Court explained the overlap between the exemptions
and the lesser burden on the agency under Exemption 7(C):

> FOIA Exemption 7(C) overlaps with Exemption 6 in that
> it also protects against unwarranted intrusions of
> personal privacy, but Exemption 7(C) is limited to
> information compiled for law enforcement purposes.
> 5 U.S.C. § 552(b)(7)(C).  An evaluation of an agency's
> claim of Exemption 7(C) also requires a court to
> balance the implicated privacy interests against the
> public interest in disclosure.  Reporters Comm., 489
> U.S. at 776, 109 S.Ct. 1468; SafeCard Servs. [, Inc. v.
> SEC, 926 F.2d [1197,] at 1205 [D.C. Cir. 1991].
> However, due to the sensitive nature of law enforcement
> records and the greater privacy interest in such
> records, the burden on an agency seeking protection of
> Exemption 7(C) is less than it is for Exemption 6
> protection, as the agency need only show a reasonable

-26-

> likelihood of unwarranted invasion of personal privacy.
> 5 U.S.C. § 552(b)(7)(C).

Id. For the reasons provided in the Exemption 6 discussion, the
FBI also properly withheld the entire informant file pursuant to
Exemption 7(C).

The informant file contains three types of information
properly withheld under Exemption 7(C) in conjunction with
Exemption 6.  The three types of information are:  (1) the
details of the informant's participation in the investigation;
(2) the names and telephone numbers of FBI Special Agents and
other employees; and (3) information of other third parties.

First, the details of the informant's participation in the
investigation were properly withheld under Exemption 7(C) because
the informant holds a significant privacy interest in assuring
his and his family's safety.  See, e.g., Judicial Watch, 407 F.
Supp. 2d at 76-77 (approving use of Exemption 6 when agency
withheld information to assure individuals' safety), aff'd in
pertinent part, 449 F.3d 141, 152-154 (D.C. Cir. 2006).

In addition to the safety-related privacy interests, the
informant also holds a privacy interest in not having the details
of his confidential informant file revealed.  See, e.g.,
Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998)
(finding that government attorney who acknowledged investigation
on himself still held privacy interest in file details that
outweighed public interest in disclosure).  Accordingly, the

-27-

informant's privacy interest in non-disclosure of the details of
his confidential informant file outweighs the post-acknowledgment
residue of public interest (if any) that might exist in this
case.

Second, the names and telephone numbers of FBI Special
Agents and other employees were properly withheld under Exemption
7(C). The rights of FBI Special Agents and support personnel to
protection of their personal privacy pursuant to Exemption 7(C)
is well established. See, e.g., Neely v. FBI, 208 F.3d 461, 464-
66 (4th Cir. 2000) (finding that "FBI agents, government
employees, third-party suspects, and other third parties
mentioned or interviewed in the course of the investigation have
well-recognized and substantial privacy interests"); In re Wade,
969 F.2d 241, 246 (7th Cir. 1992) (recognizing that "FBI agents'
privacy interests are serious and substantial"); Voinche, 412 F.
Supp. 2d at 67-69 (approving use of Exemptions 6 and 7(C) to
protect names and contact information of FBI Special Agents, and
names of other FBI employees); Mack, 259 F. Supp. 2d at 106-7
(D.D.C. 2003) (protecting identities of agents in investigative
records). Thus, the FBI's use of Exemption 7(C) for this purpose
was appropriate.

Third, information of other third parties mentioned in the
informant's file was properly withheld under Exemption 7(C).
Indeed, the Supreme Court has affirmed the strong privacy

-28-

interests held by third parties who are mentioned in law enforcement files, finding that "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." Reporters Committee, 489 U.S. at 765. Courts have consistently accorded Exemption 7(C) protection to individuals mentioned in FBI criminal investigative records because the stigma attached to being mentioned in these records, with its accompanying potential for rumor and innuendo, outweighs any public interest in knowing who is mentioned.  See, e.g., Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) (recognizing substantial privacy interests of third parties involved in law enforcement investigations); Neely, 208 F.3d at 464-66 (finding third party privacy interests to be "well-recognized and substantial"); Mack, 259 F. Supp. 2d at 106 (protecting identities of third parties in investigative records).

    The FBI has established that the use of Exemption 7(C) for the informant's file is appropriate, and that the disclosure of the information in it would constitute an unwarranted invasion of personal privacy with respect to the informant and to other third parties.  Because of this, the balancing of interests test set out by Reporters Committee tilts strongly against disclosure of any of the information at issue here.  Thus, the FBI respectfully

-29-

submits that its use of Exemption 7(C) in conjunction with

Exemption 6 was appropriate.

> C.    Pursuant to 5 U.S.C. § 552(b)(7)(D), the FBI
>        Properly Withheld Information Which
>        Could Reasonably Be Expected to Disclose
>        the Identity of Confidential Sources
>        <u>and/or Information Furnished By Such Sources</u>

Exemption (7)(D) of the FOIA exempts from mandatory

disclosure of records or information compiled for law enforcement

purposes to the extent that disclosure of the records or

information

> could reasonably be expected to disclose the identity
> of a confidential source, including a State, local, or
> foreign agency or authority or any private institution
> which furnished information on a confidential basis,
> and, in the case of a record or information compiled by
> a criminal law enforcement authority in the course of a
> criminal investigation or by an agency conducting a
> lawful national security intelligence investigation,
> information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

To properly invoke Exemption 7(D) to protect from disclosure

information obtained from an informant, the FBI must show that

the information at issue was supplied to the FBI by a source in

confidence in the course of a criminal investigation. <u>Lesar v.</u>

<u>U.S. Dep't of Justice</u>, 636 F.2d 472, 492 (D.C. Cir. 1980). Once

that determination is made, "all such information obtained from

the confidential source receives protection." <u>Id.</u> "Any other

result would jeopardize the opportunity of federal law

enforcement agencies to obtain similar information in future

-30-

cases and, as a consequence, law enforcement at the federal level would needlessly suffer without any compensating benefit." <u>Nix v. United States</u>, 572 F.2d 998, 1005 (4th Cir. 1978).[4]

The FBI invoked Exemption 7(D) to withhold several categories of information, including information supplied by the informant, source symbol numbers, and informant file numbers. (<u>See</u> Hardy Decl. ¶ 4.)  Concerning the first category -- information provided by the informant -- as the Hardy Declaration attests, this information was gathered pursuant to an international drug trafficking investigation conducted by the FBI (<u>See</u> <u>id.</u> ¶ 4.)  Disclosure of the information provided by the confidential informant would have a chilling effect on the FBI's gathering of confidential information because potential informants would fear reprisals should they agree to cooperate and provide information.  (<u>See</u> <u>id.</u> ¶ 54.)

The Exemption 7(D) protection for the identity of and for the information received from a source providing information under an express promise of confidentiality is well established. <u>See, e.g.</u>, <u>Boyd v. Criminal Div., U.S. Dep't of Justice</u>, 475 F.3d 381, 389-90 (D.C. Cir. 2007) (finding that Exemption 7(D) could be used to protect the identity of the informant and the

---

[4] The decision of the United States Supreme Court in <u>U.S. Dep't of Justice v. Landano</u>, 508 U.S. 165 (1993), does not affect the analysis here, because as the Hardy Declaration indicates, all of the grants of confidentiality here were expressly given. (<u>See</u> Hardy Decl. ¶ 54.)

-31-

information provided by the informant); <u>Ortiz v. HHS</u>, 70 F.3d
729, 732 (2d Cir. 1995) (stating that "Exemption 7(D) is meant to
. . . protect confidential sources from retaliation that may
result from the disclosure of their participation in law
enforcement activities," and to "'encourage cooperation with law
enforcement agencies by enabling the agencies to keep their
informants'" (quoting <u>United Technologies Corp. v. NLRB</u>, 777 F.2d
90, 94 (2d Cir. 1985))); <u>Billington v. U.S. Dep't of Justice</u>, 301
F. Supp. 2d 15, 22 (D.D.C. 2004) (stating that "Exemption 7(D)
has long been recognized as affording the most comprehensive
protection of all of FOIA's law enforcement exemptions" (citing
<u>Voinche v. FBI</u>, 940 F. Supp. 323, 331 (D.D.C. 1996))).
Disclosing this information could lead to reprisals against the
informant, and could have a chilling effect on the FBI's
informant program.  <u>See</u> <u>Ortiz</u>, 70 F.3d at 732; <u>Kele v. U.S. Dep't
of Justice</u>, No. 86-1795, 1988 WL 21705, at *3 (D.D.C. Feb. 29,
1988) ("The policy of 7(D) is to assure continued cooperation
from confidential sources by eliminating the potential risk of
embarrassment, harassment, and ridicule that exposure would
entail.").  Thus, the FBI properly withheld information provided
by an informant under an express grant of confidentiality.

The FBI also used Exemption 7(D), in addition to Exemption
2, to withhold permanent source symbol numbers and informant file
numbers.  (<u>See</u> Hardy Decl. ¶ 55.)  Permanent source symbol

-32-

numbers identify certain sensitive confidential informants who provided information to the FBI under express grants of confidentiality.  (See id.)  As explained in the Hardy Declaration, FBI source symbol numbers include a field office designation as well as a sequentially assigned number that is used to identify a particular informant.  (See id. ¶ 32.)  If the permanent source symbol number were released, it would become known every time a particular informant provided certain information.  (See id. ¶¶ 32, 55.)  In similar fashion, the FBI has withheld informant file numbers.  These numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an express grant of confidentiality.  (See id. ¶ 55.)  Disclosure of these file numbers also could identify the confidential informant who provided the information in an informant file.  (See id.)  Disclosure of permanent source symbol numbers and informant file numbers also would have a chilling effect on the FBI's gathering of confidential information, because potential informants would be less likely to provide information.  (See id. ¶¶ 33, 55.)

    Protection of these source symbol numbers and informant file numbers is essential to maintaining the confidentiality of informants' identities and to ensuring that the safety of informants is not compromised.  Withholding these sensitive numbers also is critical to maintaining the effectiveness of the

-33-

FBI's confidential source program.  See e.g., Ortiz, 70 F.3d at

732; Wheeler v. U.S. Dep't of Justice, 403 F. Supp. 2d 1, 13

(D.D.C. 2005) (finding that FBI properly redacted under Exemption

7(D) source symbol numbers, because disclosure could be used to

identify sources); Putnam v. U.S. Dep't of Justice, 873 F. Supp.

705, 716 (D.D.C. 1995) (finding "coded identification numbers,

file numbers and information that could be used to identify

sources" properly withheld).

Because the relevant case law supports the FBI's use of

Exemption 7(D) to protect the information provided by a

confidential informant, as well as sensitive internal numbers

used in connection with its confidential informant program, the

FBI respectfully submits that its use of Exemption 7(D) was

appropriate.

> D.    Pursuant to 5 U.S.C. § 552(b)(7)(E), the
>        FBI Properly Withheld Information that Would
>        Disclose Techniques and Procedures for Law
>        Enforcement Investigations or Guidelines for
>        Law Enforcement Investigations if Such
>        Disclosure Could Reasonably be Expected to
>        Risk Circumvention of the Law

The FBI withheld pursuant to Exemption 7(E) information

pertaining to the internal techniques and procedures for funding

of the confidential informant.[5]  (See Hardy Decl. ¶ 57.)  As

---

[5] The FBI invoked Exemption 2 in addition to 7(E) for most
of the documents related to the funding of the confidential
informant.  Some of the funding information (information provided
to the FBI by the informant) is not withheld pursuant to
Exemption 2.

-34-

explained in the Exemption 2 discussion above, release of this
information "could impede the FBI's effectiveness in
administering its operations" because it could allow someone to
"exhaust the FBI's funding of a particular investigation."  (Id.
¶ 30.)  Drug traffickers could thereby "circumvent laws and
investigations related to enforcement actions against
international drug trafficking through manipulation of the
confidential informant program."  (Id. ¶ 57.)

    "Exemption 7(E) provides categorical protection to
information related to law enforcement techniques."  Smith v.
ATF, 977 F. Supp. 496, 501 (D.D.C. 1997).  To properly invoke
this exemption, the FBI must demonstrate that disclosure of the
relevant funding programs "would disclose techniques and
procedures for law enforcement investigations or prosecutions."
5 U.S.C. § 552(b)(7)(E).  Although this first clause of Exemption
7(E) "requir[es] no demonstration of harm or balancing of
interests," Peter S. Herrick's Customs & Int'l Trade Newsletter
v. U.S. Customs & Border Prot., No. 04-00377, 2006 WL 1826185, at
*7 (D.D.C. June 30, 2006), it ordinarily protects only those
techniques "not well-known to the public," Judicial Watch, Inc.
v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146, 179 (D.D.C.
2004).  Although it likely is public knowledge that the FBI
provides some level of funding to confidential informants, courts
have repeatedly held that the details of even commonly known

-35-

techniques are properly withheld under Exemption 7(E). See, e.g., Coleman, 13 F. Supp. 2d at 83 (upholding the use of Exemption 7(E) to protect documents involving "the manner and circumstances of the various techniques that are not generally known to the public"); Wickline v. FBI, No. 92-1189, 1994 WL 549756, at *5 (D.D.C. Sept. 30, 1994) (protecting commonly used techniques from disclosure when the circumstances of its use is not widely known).

The details of the FBI's funding of confidential informant-related programs -- what it pays for and how much it is willing to pay -- are exactly the kinds of details that are not widely known. Cf. Leveto v. IRS, No. 98-285, 2001 U.S. Dist. LEXIS 5791, at *21 (W.D. Pa. Apr. 10, 2001) (protecting dollar amount budgeted for agency to investigate particular individual, because release could allow others to learn agency's monetary limits and undermine such investigations in future).

Moreover, under the second clause of Exemption 7(E), which protects from disclosure "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E), the FBI has demonstrated that release of this funding information could allow criminals to circumvent the law and to manipulate its confidential informant program, which also demonstrates that this information is properly withheld.

-36-

See, e.g., PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) (holding that "release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); Wishart v. Comm'r, No. 97-20614, 1998 WL 667638, at *6 (N.D. Cal. Aug. 6, 1998) (protecting IRS Discriminant Function Scores to avoid possibility that "taxpayers could manipulate" return information to avoid IRS audits), aff'd, 199 F.3d 1334 (9th Cir. 1999) (unpublished table decision).

Because the details of the internal techniques and procedures for funding confidential informants is internal information not well known to the public, and also because release of that information could impede the effectiveness of the confidential informant program and allow for the circumvention of the law, the FBI properly withheld this information pursuant to Exemption 7(E).

> E.    Pursuant to 5 U.S.C. § 552(b)(7)(F), the
>       FBI Properly Withheld Information Which
>       Could Reasonably be Expected to Endanger the
>       Life or Physical Safety of Any Individual

Exemption 7(F) provides protection to "any individual" when disclosure of information about him or her "could reasonably be expected to endanger [his] life or physical safety." 5 U.S.C. § 552(b)(7)(F). In this case, the FBI invoked Exemption 7(F) to protect the information provided by the informant because the FBI

-37-

"is concerned with the harm that could be caused to the informant and his family should these records that reveal him to be an FBI informant and cooperating witness get into the hands of the fugitives and unindicted drug traffickers."  (Hardy Decl. ¶ 59.) There is a serious threat of retaliation against the informant and his family, which is evidenced by the fact that they have been threatened by drug traffickers in the past.  (See id.) Additionally, the FBI also is concerned that other third-party individuals, sources, and potential witnesses who possess information relative to the investigation could be subject to physical harm should information related to them be revealed. (See id. ¶ 60.)

The reasons articulated by the FBI are precisely the reasons for the protection afforded by Exemption 7(F).  See, e.g., Brunetti v. FBI, 357 F. Supp. 2d 97, 109 (D.D.C. 2004) (approving the withholding of the identities of individuals who cooperated with the FBI, in light of the "violent nature" of the investigated criminal organization); Blanton v. U.S. Dep't of Justice, 182 F. Supp. 2d 81, 87 (D.D.C. 2002) (acknowledging that disclosure of identities of "FBI agents and non-law enforcement persons assisting in the investigation could endanger their safety"); Jimenez v. FBI, 938 F. Supp. 21, 30 (D.D.C. 1996) (finding that Exemption 7(F) protects from disclosure names and

-38-

identifying information of confidential sources and investigative
personnel because disclosure could endanger lives).

Although the identity of the informant in this case has been
revealed, this is of no moment to the application of Exemption
7(F).  Because the details of his involvement with the FBI have
not been revealed, the informant and his family have a great
interest in having this information protected from disclosure.
See, e.g., Butler v. U.S. Dep't of Justice, 368 F. Supp. 2d 776,
786 (E.D. Mich. 2005) (protecting information that could endanger
lives of individuals who provided information to DEA); Bruscino
v. Fed. Bureau of Prisons, No. 94-1955, 1995 WL 444406, at *11-13
(D.D.C. May 12, 1995) (protecting investigatory information
obtained from sources whose lives would be endangered by
disclosure, especially in view of "rough justice" to be rendered
upon informants should identities be disclosed), summary
affirmance granted in pertinent part, vacated & remanded in part,
No. 95-5213, 1996 WL 393101 (D.C. Cir. June 24, 1996).  Moreover,
"[u]nlike exemption (b)(7)(C), exemption (b)(7)(F) does not
require a balancing of interests, but rather focuses on the
potential harm to the third party."  Brunetti, 357 F. Supp. 2d at
109 n.9.

Defendant respectfully submits that it properly withheld
this information pursuant to Exemption 7(F).

-39-

F.    Segregability

The FOIA requires that if a record contains information that is exempt from disclosure, any reasonably segregable information must be disclosed after deletion of the exempt information unless the nonexempt portions are inextricably intertwined with exempt portions.  See 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). Defendant reviewed each page of the relevant documents in order to be sure that no reasonably segregable, nonexempt material was withheld from plaintiff.  (See Hardy Decl. ¶ 61.)  As explained in the Hardy Declaration, the FBI conducted an "extensive review of the documents at issue" and it "determined that there is no further reasonably segregable information to be released."  (Id.) Further, the declaration explains that any "non-exempt information in this confidential informant file is so inextricably intertwined with exempt information that disclosure of the non-exempt information would result in meaningless words and phrases."  (Id.)  This is especially true in light of the very large amount of information being withheld pursuant to Exemption 7(A), which is sufficient on its own to justify the non-disclosure of the vast majority of the responsive records. Accordingly, defendant respectfully suggests that it has met its obligations to segregate non-exempt material.

-40-

<u>Conclusion</u>

For the foregoing reasons, and based upon the entire record herein, defendant respectfully requests that its motion for summary judgment be granted.

Respectfully submitted,

_____

JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney

_____

RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney

_____/S/_____

Dated:  May 16, 2007          KENNETH A. HENDRICKS
                              Attorney-Advisor
                              Office of Information and Privacy
                              United States Department of Justice
                              1425 New York Ave., NW, Suite 11050
                              Washington, DC  20530-0001
                              (202) 514-0833