UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
PETER J. HIDALGO,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )        Civil No. 06-1513 (JR)
                                     )
FEDERAL BUREAU OF                    )
   INVESTIGATION,                    )
                                     )
        Defendant                    )
_____)
```

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN
FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Preliminary Statement

Plaintiff commenced this action on August 28, 2006, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. IV 2004), seeking access to records concerning former Federal Bureau of Investigation (FBI) confidential informant Manuel ("Manny") Sanchez [hereinafter confidential source] that are maintained by the Miami Field Office (MMFO) of the FBI.

On May 9, 2007, the Court granted defendant's request for a one-week enlargement of time to file its Motion for Summary Judgement and Memorandum in Support thereof, and also granted a one-week enlargement of time for the remaining filing deadlines. On May 16, 2007, defendant moved for summary judgment on the basis that no records were improperly withheld by the FBI. On June 29, 2007, the Court granted plaintiff's request for a two-week enlargement of time to file his cross motion and opposition, and the Court also granted a two-week enlargement of time for the

-2-

remaining filing deadlines.  On July 19, 2007, plaintiff filed
his Cross-Motion for Summary Judgment and Opposition to
Defendant's Motion for Summary Judgment.  On August 7, 2007, the
Court granted the parties' request for a one-week extension of
time for the remaining two filing deadlines.

Pursuant to Local Civil Rule 7, defendant now files this
Opposition to Plaintiff's Cross-Motion for Summary Judgement and
Reply in Further Support of Defendant's Motion for Summary
Judgment, [hereinafter defendant's Opposition and Reply].  In
support of its Opposition and Reply, defendant has filed herewith
the declaration of Rodney Cortes, Special Agent, Miami Field
Office, FBI, United States Department of Justice, [hereinafter
Cortes Declaration], the primary Special Agent assigned to
Operation Vestrac.  Special Agent Cortes is uniquely qualified to
further explain the bases upon which it was determined that
information must be withheld pursuant to Exemption 7(A),
5 U.S.C. § 552(b)(7)(A).

Based upon defendant's motion for summary judgment and the
accompanying declaration of David M. Hardy, [hereinafter Hardy
Declaration], filed on May 16, 2007; this Opposition and Reply
and the accompanying Cortes Declaration; the entire record
herein; and for the reasons set forth below, defendant
respectfully suggests that plaintiff's arguments are without
legal merit and that defendant is entitled to summary judgment as

-3-

a matter of law.

## Argument

Plaintiff's arguments are based on strained reasoning and distortions of this Court's previous rulings in the related case, Hidalgo v. FBI, No. 04-562 (JR) (D.D.C.) ("Hidalgo II").  Because plaintiff's arguments are without merit, defendant respectfully requests that this Court deny plaintiff's cross-motion for summary judgment and instead grant summary judgement as a matter of law to defendant.

> I.   The FBI Properly Invoked Exemption 7(A) Because the Vestrac Investigation Is Open and Additional Disclosure of the Responsive Records Would Harm Pending Enforcement Proceedings

Plaintiff's claim that the Operation Vestrac drug trafficking investigation is closed, and, therefore, that Exemption 7(A) is inapplicable, is without merit.  To support its invocation of Exemption 7(A), the FBI must show that a law enforcement proceeding is pending or prospective and that the release of information about it could reasonably be expected to cause some articulable harm.  See, e.g., Bevis v. Dep't of State, 801 F.2d 1386, 1388 (D.C. Cir. 1986); Long v. U.S. Dep't of Justice, 450 F. Supp. 2d 42, 73 (D.D.C. Sept. 8, 2006). Defendant has previously provided ample support for the FBI's invocation of Exemption 7(A), and it provides even more with this Reply.

As is shown by the Hardy Declaration, filed on May 16, 2007,

-4-

and the Cortes Declaration, filed herewith, the Operation Vestrac
drug trafficking investigation remains open.  (See Hardy Decl. ¶¶
4, 46; Cortes Decl. ¶¶ 2, 6-9.)  The Hardy Declaration clearly
details how the pending law enforcement proceedings could suffer
specific harms if additional information is disclosed.  (See
Hardy Decl. ¶¶ 47-48.)  Such harms include the identification of
and possible harm to persons mentioned in these records
(including potential witnesses); premature disclosure of
evidence; attempts to evade prosecution; identification of
unindicted persons of interest; the destruction of evidence; and
the revelation of the government's body of knowledge with respect
to the subject's dates of activity.  (Id.)

     The Cortes Declaration supplements the justification
provided in the Hardy Declaration and cites similar harms in
explaining that disclosure would interfere with the pending law
enforcement proceedings and result in harm to the investigation.
(See Cortes Decl. ¶¶ 5, 7-10.)  Special Agent Cortes emphasizes
harms such as the revelation of the government's trial strategy,
the creation of false evidence, and the revelation of the scope
and direction of the investigation.  (Id. at 10.)

     In his cross-motion and opposition, plaintiff clings to the
barest of threads.  For example, plaintiff leaps to the
conclusion that the document description provided in this case
for the document indexed by the FBI as Hidalgo III-1922 itself

-5-

suggests that the Operation Vestrac drug trafficking
investigation has been closed.  (See Mem. P. & A. Supp. Pl.'s
Cross-Mot. Summ. J. & Opp'n to Def.'s Mot. Summ. J. [hereinafter
Plaintiff's Memorandum and Opposition], filed July 19, 2007, at
11.)  Plaintiff alleges, therefore, that Exemption 7(A) is
inapplicable.  (Id.)  But as is plain on the face of the index,
that document description references "closing [the] CW case," not
closing the Vestrac drug trafficking investigation.  (See Hardy
Decl. at Ex. G.)  As the Cortes Declaration states, this document
concerns "the administrative closing of the cooperating witness
file, not the termination of the FBI's Operation Vestrac
investigation," which remains open.  (See Cortes Decl. ¶ 6.)
Similarly, none of the old testimony cited by plaintiff discusses
closure of the Vestrac drug trafficking investigation.  (See
Pl.'s Mem. & Opp'n, at 20.)

    The Hardy and Cortes Declarations, on the other hand,
clearly explain that the Vestrac drug trafficking investigation
remains open and pending, with prospective enforcement
proceedings clearly on the horizon.  (See Hardy Decl. ¶¶ 4, 46;
Cortes Decl. ¶¶ 2, 5-10.)  And, the Cortes Declaration clarifies
that the investigation involves current enforcement activity
regarding Vestrac fugitives, such as the pursuit of overseas
subjects through coordination "with overseas FBI offices and
Interpol to effect their capture."  (See Cortes Decl. ¶ 7.)

-6-

Accordingly, and despite plaintiff's claim otherwise, the Vestrac drug trafficking investigation continues and will likely continue for a significant period of time.

The Hardy Declaration has also clearly articulated the harms that would result from the disclosure of this information and it links those harms to the information in the responsive file. (See Hardy Decl. ¶¶ 47-48.)  The Cortes Declaration reiterates similar harms, and provides an account of the potential harms from the law enforcement officer's perspective.  (See Cortes Decl. ¶¶ 5, 7-10.)  As demonstrated by defendant, additional disclosure of information from the responsive records would cause a distinct harm to the ongoing law enforcement proceedings. Accordingly, for the reasons discussed in defendant's Memorandum in support of it s motion for summary judgment, as well as those discussed in this Opposition and Reply, defendant properly invoked Exemption 7(A) to protect the responsive records from disclosure.

    II.  Plaintiff Distorts this Court's Rulings in <u>Hidalgo II</u> in Order to Argue Against the FBI's Application of Exemptions 6, 7(C), and 7(D)

Plaintiff largely bases his opposition to defendant's Exemption 6, 7(C), and 7(D) assertions on his own mistaken interpretation of this Court's rulings in <u>Hidalgo II</u>.  Plaintiff mischaracterizes <u>Hidalgo II</u> as having found that the FBI is not permitted to assert Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6),

-7-

7(C), to protect these exact records because the public interest in disclosure outweighs the confidential source's privacy interest.  (See Pl.'s Mem. & Opp'n, at 11-12, 15, 17, 18.)  Yet this was not the determination of this Court in Hidalgo II at all.  Plaintiff further mischaracterizes Hidalgo II as finding that the FBI is not permitted to apply Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), to protect against disclosure.  (See Pl.'s Mem. & Opp'n, at 15, 22.)  Again, this Court did not make such a determination.  Plaintiff misses the mark entirely with both of these interpretations.

In fact, this Court's ruling in Hidalgo II was very limited. The actual disclosure of records was not ordered by the Court. Rather, the decision cited by plaintiff focused on the FBI's search for records, and on whether the FBI could invoke a "Glomar"[1] response, in which the FBI refused to confirm or deny the existence of responsive records pursuant to Exemptions 7(C), and 7(D).  (Hidalgo II, Mem. Order, filed Sept. 29, 2005, at 6.) This Court found that the FBI could not invoke such a "Glomar" response because the confidential source was known and because the government had not shown that his safety would be compromised "if the government were to acknowledge the mere existence of

---

[1] This term stems from the case of Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which concerned a request for records about the Glomar Explorer (a ship allegedly used by the CIA) in response to which the CIA refused to confirm or deny the existence of responsive records.

-8-

records indicating that he is a source in cases the plaintiff does not know about."  (Id.)

   In so finding, this Court stated its view that the government had not placed a privacy interest in the balance. (Id. at 4.)  This Court also found plaintiff's demonstration of a public interest to be "not overwhelming[]."  (Id. at 5.)  It is significant that this Court's finding in that case was made in the absence of a privacy interest counter weight.

   This Court did, in Hidalgo II, specifically state that the government could invoke exemptions to withhold information, finding that: "[i]f the government wishes to exclude specific information furnished by a confidential source, it may seek a specific 7(D) exemption for that information, with an appropriate Vaughn index" (id. at 6); and also that the government must conduct a search for Headquarters records and **either** provide the documents requested **or** produce a Vaughn index."  (Id.)(emphasis added)  Subsequently, the Court denied the government's request for reconsideration of the Glomar decision, but again ruled that the government could apply FOIA exemptions to protect privacy and source confidentiality.  (Hidalgo II, Order, filed Oct. 25, 2005, at 1.)  This Court specifically stated that the government could apply Exemptions 7(C) and 7(D) to protect the interests outside of the acknowledged context.  (Id.)

-9-

A.    Plaintiff Distorts <u>Hidalgo II</u> In a Failed Attempt
      to Refute the Applicability of Exemptions 6 and 7(C)

Plaintiff's attempt to refute the applicability of
Exemptions 6 and 7(C) is based on his own mistaken belief that
<u>Hidalgo II</u> in some way requires disclosure.  As discussed above,
plaintiff's belief that <u>Hidalgo II</u> found that the public interest
outweighed the subject's privacy interest is incorrect.  (<u>See,
e.g.</u>, Pl.'s Mem. & Opp'n, at 11.)  The <u>Hidalgo II</u> decision cited
by plaintiff did not find that the subject's privacy interest was
outweighed by the public interest, nor did the decision require
actual disclosure of records.  Rather, it was a ruling on the
FBI's use of a Glomar response.  (Mem. Order, filed Sept. 29,
2005, at 6.)

While the <u>Hidalgo II</u> Court ruled that the FBI could not
issue a "neither confirm, nor deny" response as to the existence
of records, the Court's balancing-of-interests rationale
demonstrates it viewed the government as not having put a privacy
interest into consideration for balancing.  (<u>Id.</u> at 5.)  That is
far different from plaintiff's suggestion that the Court actually
ruled on the assertion of exemptions to withhold identified
records.  In fact, this Court would not have ruled on what had
not yet happened.  The <u>Hidalgo II</u> Court itself found plaintiff's
showing of a public interest to be "not overwhelming." (Mem.
Order, filed Sept. 29, 2005, at 5.)  In the present case, to the
extent that any of the "not overwhelming" public interest

-10-

remains, it must now be measured against the substantial privacy
interests of the confidential source and his family that have
been placed in the balance.

In the present case, the confidential source and his family
have substantial privacy interests to protect, in no small part,
from the very real threat to their safety that would arise from
disclosure of this information.  See, e.g., Judicial Watch, Inc.
v. FDA, 407 F. Supp. 2d 70, 76-77 (D.D.C. 2005) (approving use of
Exemption 6 when agency withheld information to assure
individuals' safety), aff'd in pertinent part, 449 F.3d 141, 152-
154 (D.C. Cir. 2006).  Defendant has, therefore, made the
determination that it must assert Exemptions 6 and 7(C) to
protect these substantial privacy interests.  (See Hardy Decl. ¶¶
38-40.)  The public interest in the acknowledgment of whether the
FBI has records on the subject has been satisfied by the FBI's
acknowledgment that it has responsive records.  To the extent
that any of the "not overwhelming" public interest remains, it is
far outweighed by the substantial privacy interests of the
subject and his family in the actual content of the now-
acknowledged records.

Plaintiff's attempt to distinguish Judicial Watch, Inc. v.
FDA is ineffectual, because he does not even address the
safety/privacy-significant point of that case, i.e., that safety
is a privacy interest to be protected.  See Judicial Watch, 407

-11-

F. Supp. 2d at 76-77 (approving use of Exemption 6 when agency withheld information to assure individuals' safety). Significantly, plaintiff does not refute the legal principle that safety is a privacy interest to be protected, see id., and he makes the strained implication that the threat of international drug trafficking-related violence is somehow less than dangerous.

Plaintiff also fails in his attempt to distinguish the Balderrama v. DHS case, which approved the use of Exemptions 6 and 7(C) to protect individuals who "could be subjected to harassment and retaliation."  No. 04-1617, 2006 WL 889778, at *9 (D.D.C. 2006).  Plaintiff states that in Balderrama, the Court approved the use of those exemptions "only after finding that 'there does not appear to be a strong public interest in the information sought.'" (Pl.'s Mem. & Opp'n, at 17) (quoting Balderrama, 2006 WL 889778, at *9).)  In Hidalgo II, this Court found plaintiff's public interest to be "not overwhelming," (Mem. Order, filed Sept. 29, 2005, at 5), which can only be construed as something less than "strong."  In the present case, the confidential source's significant safety-related privacy interests that are now on the balance far outweigh plaintiff's less than strong and "not overwhelming" public interest.[2]

---

[2]  For the same safety-related reasons discussed here, and in Defendant's Memorandum, defendant properly applied Exemption 7(F) to protect certain information from disclosure because that information "could reasonably be expected to endanger the life or physical safety of any individual,"  5 U.S.C. § 552(b)(7)(F), in

-12-

The <u>Bennett v. DEA</u> case relied on by plaintiff, is distinguishable from the present case in that the <u>Bennett</u> court does not discuss a safety-related privacy interest with respect to the confidential informant in that case. See <u>Bennett v. DEA</u>, 55 F. Supp. 2d 36, 41 (D.D.C. 1999). In <u>Bennett</u>, the government apparently did not place a safety-related privacy interest in the balance with respect to the informant, and the court only discussed "humiliation, stigmatization, and embarrassment" as the informant's privacy interests to be balanced. <u>Id.</u> Significantly, the <u>Bennett</u> court did approve the safety-related application of Exemption 7(C) -- and Exemption 7(F) -- with respect to DEA Special Agents. <u>Id.</u> at 43.

In the present case, defendant has balanced the safety-related privacy interests of the confidential source, his family, and FBI personnel against any limited public interest that may exist. Plaintiff does not demonstrate why individuals who are confidential informants/cooperating witnesses are somehow afforded different and diminished safety-related privacy interests than law enforcement officers under Exemption 7(C). In the balance, the privacy interests are more substantial.

As the Hardy Declaration explains, during the confidential source's undercover participation, he and his family were in "constant risk of physical harm" and his family was threatened by

_____

this case, the subject and his family.

-13-

drug traffickers.  (See Hardy Decl. ¶ 5.)  Mr. Hardy further
explains that releasing the details of the confidential source's
participation would place the source and his family at risk of
retaliation by drug traffickers, (see Hardy Decl. ¶¶ 38-39),
especially in light of previous threats leveled by the drug
traffickers.  (See id. ¶ 5.)

    Significantly, the Hidalgo II Court explicitly ruled that
withholding under Exemption 7(C) was available to defendant.
(Order, filed October 25, 2005.)  Plaintiff has neither refuted
that ruling, nor has plaintiff refuted the substantial privacy
interests held by the confidential source and his family.  Here,
as in the cases discussed above, withholding is appropriate to
protect the significant privacy interests at stake.  Because
those substantial privacy interests far outweigh any "not
overwhelming" public interest that might exist, Exemptions 6 and
7(C) are properly asserted to protect the responsive records from
disclosure.

    Regarding other privacy interests, plaintiff states that he
did not ask for information on FBI Special Agents and other third
parties, thereby accusing defendant of making a "strawman"
argument regarding such information.  (See Pl.'s Mem. & Opp'n, at
17-18.)  On this point, plaintiff is actually engaging in a bit
of straw manning himself, since plaintiff did not limit his
request to particular types of records.  (See Hardy Decl. ¶¶ 8-9

-14-

& Ex. A.)

Of course, the responsive records do include information on FBI Special Agents and other third parties.  (See Hardy Decl. ¶¶ 4, 40.)  As previously discussed by defendant, those third parties have privacy interests to be protected.  (See Def.'s Mem. P. & A. Supp. Mot. Summ. J. at 17-19.)  Plaintiff cites no legal basis to deny protection for these privacy interests. Accordingly, because Exemptions 6 and 7(C) also protect the privacy interests of the FBI Special Agents and other third parties, the FBI properly invoked these Exemptions with respect to such interests.

  B.   Plaintiff Distorts Hidalgo II In an Attempt to
       Refute the Applicability of Exemption 7(D)

Plaintiff's attempt to refute the applicability of Exemption 7(D) relies, once again, on his own shaky interpretation of the Hidalgo II case.  Plaintiff suggests that this Court in Hidalgo II ruled that Exemption 7(D) could not be used to protect records from disclosure.  (See Pl.'s Mem. and Opp'n, at 15, 22.) Plaintiff is mistaken.  As discussed above, the Hidalgo II decision cited by plaintiff was not a decision requiring actual disclosure of records.  Rather, it was a ruling on defendant's use of a Glomar response.  (Mem. Order, filed Sept. 29, 2005, at 6.)  Subsequently, the Hidalgo II Court explicitly found that that withholding under Exemption 7(D) was available to defendant. (Order, filed Oct. 25, 2005, at 1.)  Plaintiff cites no legal

-15-

basis to refute that ruling, and he fails in his attempt to undermine the applicability of Exemption 7(D).

Plaintiff generally alleges that Exemption 7(D) is not available to protect from disclosure information received from a cooperating witness engaged in undercover law enforcement activity targeting international drug trafficking. (See Pl.'s Mem. & Opp'n, at 22.)  That contention is at odds with the law on this point. See, e.g., Meserve v. U.S. Dep't of Justice, No. 04-1844, 2006 U.S. Dist. LEXIS 56732, at *29-30 (D.D.C. Aug. 14, 2006) (finding that Exemption 7(D) properly protects information obtained from confidential sources, including a cooperating witness.)  In fact, this is the very heart of Exemption 7(D) -- protecting persons promised confidentiality in law enforcement investigations.  Accordingly, Exemption 7(D) is applicable to protect from disclosure information obtained from the confidential source in this case. (See Def.'s Mem. P. & A. Supp. Mot. Summ. J. at 29-33.)

In a related argument, plaintiff questions the validity of the express assurances of confidentiality provided to Manny Sanchez. (See Pl.'s Mem. & Opp'n, at 24.)  Such a bald assertion is grounded in the desperate hope that defendant could have failed to make such a promise.  Yet, as the Hardy Declaration demonstrates, this confidential source was provided with an express assurance of confidentiality. (See Hardy Decl. ¶ 54.)

-16-

The source was a registered confidential source for the FBI,
having been assigned a permanent source symbol number, (id. at
32), which is viewed as an indication of Exemption 7(D)
confidentiality.  Boyd v. ATF, No. 05-1096, 2007 WL 2199305,
at *4 (D.D.C. Aug. 2, 2007).  Even if the FBI had failed to
promise confidentiality, which it did not fail to do in this
case, confidentiality could easily be infered under these facts.
See, e.g., id. ("reasonable to infer that a registered informant"
provided information on a confidential basis); Truesdale v. U.S.
Dep't of Justice, No. 03-1332, 2005 WL 3294004, at *7 (D.D.C.
Dec. 5, 2005) ("Given the nature of the criminal actions in this
case and the fact that the informants were witnesses to
Plaintiff's drug trafficking, the documents were properly
withheld by the FBI under 7(D) based on an implied grant of
confidentiality.").  In the present case, the FBI itself is the
agency that registered the confidential source, assigning a
permanent source symbol number, which the FBI assigns to
"confidential informants who report information to the FBI on a
regular basis pursuant to an 'express' grant of confidentiality."
(Hardy Decl. ¶ 32.)  The confidential source conducted undercover
activity in a federal investigation targeting international drug
trafficking.  (Id. at 4).  As such, the information he provided
readily qualifies for Exemption 7(D) protection.

Finally, plaintiff also claims that Exemption 7(D) is not

-17-

applicable because some information is in the public domain.
(See Pl.'s Memo. & Opp'n, at 22-24.)  That contention is at odds
with the law on this point.  Exemption 7(D) protection is not
waived when a confidential source testifies in court.  See, e.g.,
Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir.
1992) (concluding that an informant's testimony in open court did
not "'waive the [government's] right to invoke Exemption 7(D)'"
(quoting Parker v. Dep't of Justice, 934 F.2d 375, 379-81 (D.C.
Cir. 1991)); Parker, 934 F.2d at 379 (stating that "government
agency is not required to disclose the identity of a confidential
source or information conveyed to the agency in confidence in a
criminal investigation notwithstanding the possibility that the
informant may have testified at a public trial").

The Davis court, responding to a more limited fact pattern,
also noted that the government need only disclose the "exact
information" testified to in court.  Davis, 968 F.2d at 1281.  In
Davis, tape recordings were at issue, and the court ruled that
the government could properly withhold the recordings unless it
was shown that "those tapes, or portions of them, were played
during the informant's testimony."  (Id.)  In the present case,
plaintiff has not made any showing that the withheld records, or
portions of them, were read aloud during the confidential
source's testimony.  Accordingly, the FBI properly asserted
Exemption 7(D) to protect from disclosure the information

-18-

received from the confidential source in this case.  <u>See, e.g.,</u>

<u>Boyd v. Criminal Div., U.S. Dep't of Justice</u>, 475 F.3d 381, 389-

90 (D.C. Cir. 2007).

III. Exemptions 2 and 7(E) Were Properly Asserted to Protect
     Information Related Solely to the Internal Personnel
     Rules and Practices of the Agency and Information that
     Would Disclose Techniques and Procedures for Law
     Enforcement Investigations or Guidelines for
     Law Enforcement Investigations if Such Disclosure Could
     <u>Reasonably be Expected to Risk Circumvention of the Law</u>

Plaintiff offers three hollow and contradictory arguments

for his claim that Exemptions 2 and 7(E), 5 U.S.C. 552 § (b)(2),

(7)(E), are inapplicable.  (<u>See</u> Pl.'s Memo. & Opp'n, at 24-26.)

First, with his "rhetorical red herring" comment, (<u>id.</u> at 24),

plaintiff claims that he did not request information on internal

practices, investigative techniques, informant file number, and

confidential informant numbers.  (<u>Id.</u>)  Plaintiff alleges that

defendant is, therefore, needlessly arguing that such information

is protected from disclosure.  (<u>Id.</u>)  As with his argument

against Exemptions 6 and 7(C), plaintiff chooses not to mention

that his FOIA request was not limited to particular types of

records.  (<u>See</u> Hardy Decl. ¶¶ 8-9, & Ex. A.)  The responsive

records include internal information that relates to

investigative techniques and procedures.  (<u>See</u> Hardy Decl. ¶ 30.)

Accordingly, defendant processed this information for release

determinations under the FOIA.

Second, and in apparent contradiction to his first argument

-19-

claiming that he did not request such information, plaintiff
argues that the information should be disclosed to him because it
has been made public.  (See Pl.'s Mem. & Opp'n, at 25.)
Plaintiff's argument on this point is incorrect, because he fails
to meet the "exact information" standard of showing that the
actual records withheld, or portions of them, were presented in
court.  Davis, 968 F.2d at 1281; see also Pub. Citizen v. Dep't
of State, 276 F.3d 634, 645 (D.C. Cir. 2002) (stating that the
burden is on the requester to establish that specific records in
the public domain duplicate the withheld records); Deglace v.
DEA, No. 05-2276, 2007 WL 521896, at *2 (D.D.C. Feb. 15,
2007)(finding no waiver when plaintiff produced circumstantial
evidence that the records had entered the public domain, but not
the records themselves.)  Accordingly, plaintiff's public domain
argument fails.

     Third, plaintiff claims that a risk of circumvention has not
been demonstrated.  (See Pl.'s Mem. & Opp'n, at 26.)  But
plaintiff's argument on this point fails because defendant has
shown with great detail the risks of circumvention that would
arise from disclosure.  (See Hardy Decl. ¶¶ 30-34.)  See, e.g.,
Crooker v. ATF, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (en banc)

     IV.  Defendant Satisfied its Vaughn and Segregability
          Obligations

     Plaintiff attempts to show that defendant did not meet its
Vaughn and segregability obligations, (see Pl.'s Memo. and Opp'n,

-20-

at 26.), but his attempts are without merit.

A.    Defendant Satisfied its Vaughn Obligation

In his attempt to undermine defendant's Vaughn declaration, plaintiff claims that the indexed items are neither described in sufficient detail nor linked to the exemptions applied.  (See Pl.'s Mem. & Opp'n, at 28.)  Plaintiff also claims that the index does not account for all of the responsive records.  (Id.) Plaintiff misses the mark noticeably with these allegations.

The Hardy Declaration and its attached charts together comprise one very clear Vaughn declaration, which satisfies defendant's obligation.  See e.g., Hornbeck v. U.S. Coast Guard, No. 04-1724, 2006 WL 696053, at *6 (D.D.C. 2006)(stating that "the precise form of an agency's submission -- whether it be an index, a detailed declaration, or a narrative –is immaterial.") The Hardy Declaration provides an accounting for, and a description of, the types of records found in the file (including the frequently appearing 302s, 209s, and 794s).  (See Hardy Decl. ¶¶ 22-26)  The body of the declaration also explains that the non-frequently appearing responsive documents are indexed by number and described in the charts.  (See Hardy Decl. ¶ 23.)  The Hardy Declaration clearly justifies the application of the exemptions to the various responsive records.  (Id. at 27.)  See e.g., Gallant v. NLRB, 26 F.3d 168, 172-73 (D.C. Cir. 1994)(the Vaughn submission is to provide a "reasonable basis" for the

-21-

withholdings).

For the same reasons discussed above, plaintiff's argument that all of the records are not accounted for fails.  The Hardy Declaration and its charts account for all of the withheld documents.  The frequently appearing documents not individually listed by number in the chart are accounted for atop each chart and in the body of the Declaration.  (Id. at 22.)  This, too, is plain on the face of the Hardy Declaration.  The Hardy Declaration and its charts together account for and describe each document and the applicable exemptions in satisfaction of the Vaughn obligation.  Accordingly, defendant has satisfied its obligations to justify the asserted exemptions.  See e.g., Gallant, 26 F.3d at 172-73 (holding that an agency's justification for withholding records may take any form as long as the agency offers a "reasonable basis to evaluate [it]s claim of privilege")

    B.    Defendant Satisfied its Segregability Obligation

In his attempt to attack defendant's segregability showing, plaintiff belittles defendant's segregation and partial disclosure of one page.  (See Pl.'s Mem. & Opp'n, at 27.)  Contrary to plaintiff's claim, this segregation and partial disclosure of one page out of nearly 3,000 underscores the lengths to which the FBI went in satisfaction of its segregability obligation.

-22-

Plaintiff also claims that the Hardy Declaration's attestation of an extensive records review and segregability determination is insufficiently phrased. (See Pl.'s Mem. & Opp'n, at 27.)  Plaintiff's claim fails, because that attestation discusses the review and segregability determinations in detail. (See Hardy Decl. ¶ 61.)  Significantly, the Hardy Declaration more than sufficiently describes the records withheld.  (See id., generally.)  And, the Cortes Declaration also attests to a review-based determination that no additional information could be segregated and released because such release "would in fact harm the pending criminal investigation and future trial proceedings."  (See Cortes Decl. ¶ 9.)  Such detailed declarations underscore the sufficiency of defendant's segregability determinations and attestations.

> V.   Plaintiff Engages in Desperate Rhetoric in a
>      Failed Attempt to Show Bad Faith by Defendant

In an attempt to tax this Court's time with an unnecessary in camera review, plaintiff engages in a desperate effort to show that the FBI responded to the FOIA request in bad faith.  (See Pl.'s Mem. & Opp'n, at 27.)  Plaintiff hopes to create a bad faith argument with regard to the Hardy Declaration by mere allegation alone.  (Id. at 30-31.)  But, as discussed above, the Hardy Declaration and its attached index comprise one document focused clearly and in good faith towards the satisfaction of defendant's Vaughn obligation.  That declaration, which should be

-23-

"accorded a presumption of good faith," <u>SafeCard Servs., Inc. v.</u>
<u>SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991), accounts for all of
the responsive records, provides ample descriptive information as
to their content, specifies the reasons for withholding, and
details the harms and risks associated with additional disclosure
of information.  (<u>See</u> Hardy Decl. ¶¶ 22-61.)

    Plaintiff also reaches back to the <u>Hidalgo II</u> case again in
an attempt to create a bad faith argument in this case.  (<u>See</u>
Pl.'s Mem. & Opp'n, at 32.)  Plaintiff claims that the Hardy
Declaration in the present case (which relates to a request for
field office records) is contradicted by the search results in
<u>Hidalgo II</u> (which related to a request for Headquarters records).
<u>Id.</u> at 33.)  This Court, in <u>Hidalgo II</u>, found the search in that
case to be reasonable.  <u>See</u>, 2006 WL 2716086, at *1 (2006).
Despite plaintiff's suggestion to the contrary, defendant need
not address that search here.

    Plaintiff does not appear to be challenging the search for
MMFO records in the present case.  To the extent plaintiff is
challenging the MMFO search, such a challenge fails.  In this
case, the Hardy Declaration describes the methods the FBI
employed, including where the FBI searched, as well as the
appropriate search queries used to search for responsive MMFO
records.  (Hardy Decl. ¶ 21.)  <u>See e.g.</u>, <u>Oglesby v. United States</u>
<u>Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990)(stating that

-24-

an agency must make "a good faith effort to conduct a search for the requested records using methods which can reasonably be expected to produce the information requested.")

Finally, plaintiff attempts to show bad faith by mere repetition of his misguided claim that the Vestrac investigation is closed. As discussed above, the Hardy Declaration, and now, too, the Cortes Declaration, each demonstrate that the Operation Vestrac investigation remains open and pending, and those declarations describe the harms that would arise from disclosure. As discussed above, there can be no issue concerning the status of the ongoing investigation and there certainly is no bad faith on the part of the FBI in asserting that the case is open.

Although plaintiff laces his filing with baseless accusations of bad faith, his hyperbole is even more outlandish considering the numerous times plaintiff distorted the Hidalgo II findings in an effort to support his position. There is absolutely no evidence of bad faith by defendant in this case. On the merits, there is no justification for plaintiff's attempt to tax this Court's time with an unnecessary in camera review.[3]

---

[3] Of course, should the Court nonetheless decide to review the documents in camera, defendant stands willing to make them available.

-25-

<u>Conclusion</u>

For the foregoing reasons, and based upon the entire record herein, defendant respectfully submits that its Motion for Summary Judgment should be granted and that plaintiff's cross-motion for summary judgment should be denied.

Respectfully submitted,

_____
JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


_____/s/_____
Dated:  August 16, 2007    KENNETH A. HENDRICKS
Attorney-Advisor
Office of Information and Privacy
United States Department of Justice
1425 New York Ave., NW, Suite 11050
Washington, DC  20530-0001
(202) 514-0833