UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER J. HIDALGO,           )
                            )
        Plaintiff,          )
                            )
        v.                  )    Civil Action No. 06-1513(JR)
                            )
FEDERAL BUREAU OF           )
  INVESTIGATION,            )
                            )
        Defendant.          )
_____)

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

## <u>Preliminary Statement</u>

Plaintiff commenced this litigation in an attempt to ferret out information about the government's relationship with the paid informant who testified against him at trial — Manuel ("Manny") Sanchez.  Although this Court has ruled that the Defendant is obligated under the Freedom of Information Act ("FOIA") to segregate non-exempt information and at the very least, provide a meaningful, detailed *Vaughn* Index, Plaintiff has received nothing in return but one-half page, partially redacted, and a paltry chart and declaration.  Defendant's inadequate disclosures serve to obfuscate rather than enable the Court or the Plaintiff to assess Defendant's claimed exemptions.

Defendant's reply to Plaintiff's Cross-Motion and Opposition does not begin to address these shortcomings.  The

reply consists of bare, generic assertions of law and conclusory statements of fact indicative of Defendant's dismissive stance toward FOIA.  Rather than provide any additional argument or evidence to support their claimed exemptions, Defendant implies that this Court should simply accept Defendant's claim that nearly the entirety of Mr. Sanchez's file cannot be released without grave consequences to the government and Mr. Sanchez. Defendant's failure to provide a meaningful *Vaughn* Index or to make any effort to segregate non-exempt information has given this Court very little reason to be so trusting.

## Argument

**I.  DEFENDANT HAS NOT ESTABLISHED THAT IT IS ENTITLED TO WITHHOLD THE RESPONSIVE DOCUMENTS PURSUANT TO EXEMPTIONS 6 AND 7(C) BY DEMONSTRATING THAT MR. SANCHEZ'S PRIVACY INTEREST OUTWEIGHS THE PUBLIC INTEREST.**

Defendant continues to argue that it is entitled to withhold the responsive documents pursuant to Exemptions 6 and 7(C) because disclosure would infringe on Mr. Sanchez's privacy rights.  As explained below, Defendant has not provided any reason for the Court to disregard its earlier finding that the balance of interests in this case favors the public:  Defendant has not provided any evidence to support its claim that releasing the responsive documents would ***increase*** the alleged

danger to Mr. Sanchez and his family or challenged the Court's finding of a public interest in the documents.

**A.    Defendant Has Not Provided Any New Support For Its Claim that Disclosing the Relevant Documents Would Increase the Alleged Risk to Mr. Sanchez and His Family or Otherwise Infringe on His Privacy.**

As Plaintiff explained in his Cross-Motion and Opposition, Defendant argued in *Hidalgo II* that it was entitled to issue a Glomar response pursuant to Exemption 7(C) because "'[m]erely affirming that an individual is mentioned in FBI records can have a potentially embarrassing or stigmatizing effect.'" Memorandum Order, *Hidalgo v. FBI*, No. 04-0562, at 3 (Sept. 29, 2005) ("*Hidalgo II Order*") (quoting *Hidalgo II* Hardy Decl. ¶ 14). The Court rejected Defendant's argument, noting that, "[w]hether a Glomar response is appropriate under Exemption 7(C) requires '***an ad hoc balancing of private and public interests***.'" *Hidalgo II Order* at 3 (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995) (emphasis added). The Court held that the mere fact that Mr. Sanchez was mentioned in the FBI records could not harm his reputation because he already had an extensive criminal history and history as a paid government informant. *Hidalgo II Order* at 3. Because Defendant had placed no other privacy interest of Mr. Sanchez at issue, and Plaintiff had established a public interest in the responsive documents, the Court found that Defendant was not entitled to invoke Exemption 7(C). *Id.* at 4-5.

Despite the plain language of the Court's decision, Defendant now claims that it is entitled to withhold the responsive documents pursuant to Exemptions 6 and 7(C) because "[t]he Hidalgo II decision cited by plaintiff did not find that the subject's privacy interest was outweighed by the public interest[.]" (Def. Reply at 9.) Defendant appears to be suggesting that the Court did not have the **opportunity** to apply the private-public interest balancing test because Defendant did not "put a privacy interest into consideration for balancing" in Hidalgo II. (Id. at 8-9.) Therefore, according to Defendant, "this Court's finding in that case was made in the absence of a privacy interest counter weight." (Id.)

This claim is contradicted by Defendant's own filings in that case. In its memorandum in support of its Motion for Summary Judgment, Defendant acknowledged that, to evaluate its invocation of Exemption 7(C), the Court had to balance Mr. Sanchez's privacy interest against the public interest:

> The remaining consideration under Exemption 7(C) is whether confirming or denying the existence of responsive law enforcement records concerning Manny Sanchez 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.' In most cases, this determination necessitates **a balancing of the individual's right to privacy against the public's interest in disclosure**.

4

(Def. *Hidalgo II* Memo. at 4, App. at 124 (emphasis added) (quoting 5 U.S.C. § 552(b)(7)(C)(2007), App. at 124.)[1]  Defendant then argued that the balance favored Mr. Sanchez because he had "'an obvious privacy interest in keeping secret the fact that [he was] the subject[] of a law enforcement investigation.'" (Def. *Hidalgo II* Memo. at 6, App. at 126 (quoting *Nation Magazine*, 71 F.3d at 893.)  In its Opposition to Plaintiff's Cross-motion for Summary Judgment and Reply in Support of Its Motion for Summary Judgment, Defendant further argued that "Mr. Sanchez has a clear privacy interest in the existence or nonexistence of records responsive to plaintiff's request." (Def. *Hidalgo II* Opp. and Reply at 8.)

In short, Defendant's claim that it did not place "a privacy interest into consideration" in *Hidalgo II* is not correct.  Defendant plainly was aware of its obligation to satisfy the balancing test under Exemption 7(C), argued that Mr. Sanchez had an important privacy interest at stake, and claimed that Plaintiff had not proven that any public interest in

---

[1]    Defendant also argued in its summary judgment motion that the balancing test did not have to be applied to Plaintiff's request because the records at issue would not shed light on the FBI's "'performance of its statutory duties'" (Def. *Hidalgo II* Memo. at 4, App. at 124 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989)), but the Court's subsequent application of the balancing test rendered Defendant's argument moot. *See Hidalgo II Order* at 4-5.

disclosure of the documents at issue.  The Court rejected
Defendant's arguments in its *Hidalgo II* Order, and found that
Defendant was not entitled to issue a Glomar response pursuant
to Exemption 7(C).  *See Hidalgo II Order* at 4-5.

Defendant now appears to be claiming that the Court's
earlier decision is not relevant to the case at hand because it
has now allegedly made a more significant showing regarding Mr.
Sanchez's privacy interest.  Specifically, Defendant argues that
"the confidential source and his family have substantial privacy
interests to protect, in no small part, from the very real
threat to their safety that would arise from disclosure of this
information."  (Def. Reply at 10.)  In support of this claim,
Defendant cites Mr. Hardy's claim that "releasing the details of
the confidential source's participation would place the source
and his family at risk of retaliation by drug traffickers[.]"
(*Id*. at 13 (citing Hardy Decl. ¶ 5).)

But as Plaintiff explained in his Cross-motion and
Opposition (*see* Pl. Memo. at 15), the Court's found in *Hidalgo II*
that

> Sanchez's identity as a cooperator is open
> and notorious.  The government has not shown
> that he would in any way be subjected to
> 'harassment and actual danger' . . . if the
> government were to acknowledge the mere
> existence of records indicating that he is a
> source in cases that plaintiff does not know
> about.

*Hidalgo II Order* at 6 (quoting *Antonelli v. FBI*, 721 F.2d 615, 618 (7th Cir. 1983)).  While it is true that that holding was made in the context of Defendant's attempt to issue a Glomar response, Defendant has not added any additional argument or evidence showing that the release of the contents of the responsive documents would put Mr. Sanchez and his family in any greater danger than they already are.

The only new information Defendant has added to its showing in *Hidalgo II* is Mr. Hardy's claim that "[t]he risk of harm to the informant and his family from the drug traffickers with whom he came in contact persists to this day because his cooperation with the FBI has become publicly known."  (Hardy Decl. ¶ 5.)  As Plaintiff noted in his Opposition, however, Defendant does not provide any explanation of how releasing the information about Mr. Sanchez contained in the responsive documents would put his life in any ***greater*** danger than it allegedly is already in today because he is "publicly known."  Put another way, the issue is not whether Mr. Sanchez and his family are at risk, it is how disclosure of responsive documents will ***add*** to that risk.

Nor is there anything "significant" about the fact that "plaintiff does not refute the legal principle that safety is a privacy interest to be protected."  (Def. Reply at 11.)  There is no question that safety is an important privacy interest, but Defendant has not established that disclosure of the responsive

documents will increase the alleged danger to Mr. Sanchez.[2]  As
it did in *Hidalgo II*, Defendant has merely asserted that
complying with Plaintiff's request will place Mr. Sanchez in
danger without further explanation.  The Court soundly rejected
Defendant's attempt to invoke Exemption 7(C) in the earlier
proceeding because Defendant had provided no evidence to back up
its claim.  The Court should do the same here.

**B.    Defendant Has Not Challenged Plaintiff's Evidence of
        Misconduct on the Part of the Government or the
        Court's Finding in *Hidalgo II* of a Public Interest In
        the Disclosure of the Responsive Documents.**

Tellingly, Defendant has not make any effort to question or
dispute the evidence of potential misconduct Plaintiff presented
in *Hidalgo II* and which the Court relied on in rejecting
Defendant's earlier attempt to rely on Exemption 7(C).  In that
proceeding, Plaintiff presented evidence that the government
permitted Mr. Sanchez to provide inconsistent testimony
regarding his criminal history while testifying; misrepresented
the history of Mr. Sanchez's work with the FBI; misrepresented
Mr. Sanchez's payment history; and protected Mr. Sanchez from
tax and criminal liability.  Nor has Defendant refuted the
additional evidence Plaintiff provided in his Cross-motion and

---

[2]    For this same reason, Defendant's claim that Plaintiff has
not adequately "address[ed] the safety/privacy-significant point
of" *Judicial Watch, Inc. v. FDA*, 407 F. Supp. 2d 70, 76-77
(D.D.C. 2005), makes no sense.  (Def. Reply at 10.)  Whether
"safety is a privacy interest to be protected," (*id.*), is not in
dispute.

Opposition or explained the references in the *Vaughn* Index to
documents that appear to support Plaintiff's allegations. (*See*
Pl. Memo. at 13, 14 n.5 & 6.)

Defendant's only response to Plaintiff's evidence of
misconduct and the Court's previous finding regarding the public
interest is its claim that the Court's statement in *Hidalgo II*
that Plaintiff's public interest showing was "not overwhelming"
is somehow relevant. (Def. Reply at 11.) As Plaintiff
explained in his Opposition, the Court found that Plaintiff had
shown a public interest in disclosure of Mr. Sanchez's file by
providing significant evidence of government misconduct. *See*
*Hidalgo II Order* at 4-5. The amount by which Plaintiff's
showing satisfied the Court does not matter, especially given
that Defendant has not challenged this evidence of misconduct in
any way.

**C.    Defendant's Other Attempts to Distinguish the Court's
        Findings in *Hidalgo II* Are Unavailing.**

In its attempt to discount the Court's finding in *Hidalgo
II* that the balancing test required by Exemption 7(C) favored
Plaintiff, Defendant also puts a great deal of stock in the fact
that, because the Court was addressing Defendant's Glomar
response, it did not "require actual disclosure of records" and
required Defendant to either disclose the responsive documents
or provide a *Vaughn* Index. (Def. Reply at 9.) This is a red

herring.  Plaintiff has never claimed that the Court's order in *Hidalgo II* required the disclosure of records.

Defendant's reference to the fact that in *Hidalgo II* the Court "explicitly ruled that withholding under Exemption 7(C) was available to defendant," is likewise irrelevant.  Plaintiff has never suggested that the Court found that Defendant could not invoke Exemptions 6 and 7(C) in subsequent proceedings.  The issue before the Court now is whether Defendant has satisfied the requirements of the exemptions.  The Court found that Defendant had not satisfied its burden with regard to Exemptions 6 and 7(C) in *Hidalgo II*, and Defendant has not provided sufficient reason for the Court to discard its earlier finding.  The same public and private interests were at stake in *Hidalgo II*, and Defendant has not added any new information or argument to the equation.

**II.  DEFENDANT IS NOT ENTITLED TO WITHHOLD RESPONSIVE DOCUMENTS PURSUANT TO EXEMPTION 7(D) BECAUSE MR. SANCHEZ HAD NO EXPECTATION OF PRIVACY ONCE HE VOLUNTARILY CHANGED HIS STATUS FROM "CONFIDENTIAL INFORMANT" TO "COOPERATING WITNESS."**

In *Hidalgo II*, the Court rejected Defendant's claim that it was entitled to issue a Glomar response pursuant to Exemption 7(D), holding that, because Mr. Sanchez's identity was well-known, "[t]he government has not shown that he would in any way be subjected to 'harassment and actual danger' . . . if the government were to acknowledge the mere existence of records

indicating that he is a source in cases that plaintiff does not know about." *Hidalgo II Order* at 6 (quoting *Antonelli*, 721 F.2d at 618). Defendant claims that the Court's earlier ruling is irrelevant because it was made in the context of the Glomar response. (*See* Def. Reply at 14.)

Like its arguments regarding Exemptions 6 and 7(C), Defendant's attempt to distinguish the Court's earlier ruling on Exemption 7(D) falls flat because Defendant has not provided any new information or argument that contradicts the Court's earlier finding. The fact that the Court ruled on Defendant's attempt to invoke Exemption 7(D) in the context of the Glomar response in *Hidalgo II* is relevant only insofar as Defendant is able to provide new evidence showing that releasing the actual content of the responsive documents somehow "could reasonably be expected to disclose" Mr. Sanchez's identity any more than it already has been. 5 U.S.C. § 552(b)(7)(D). Defendant has not done so.

Because Defendant cannot challenge the Court's finding that "Sanchez's identity as a cooperator is open and notorious," *Hidalgo II Order* at 6, it argues that it is entitled to withhold the responsive documents pursuant to Exemption 7(D) because Mr. Sanchez was "promised confidentiality" and "provided with an express assurance of confidentiality." (Def. Reply at 15.) Whatever Mr. Sanchez was promised several years ago when the

VESTRAC investigation first started is irrelevant.  Plaintiff
explained in its Cross-motion and Opposition that Mr. Sanchez
voluntarily gave up his status as a "confidential informant" and
became a "cooperating witness" in exchange for additional
payments.  (*See* Pl. Memo. at 22-24.)  Special Agent Timothy
Flynn explained Mr. Sanchez's history during one of the trials
at which Mr. Sanchez testified:

> Q    You are saying [Mr. Sanchez] became a
> cooperating witness in December of '89?
>
> A    As I explained earlier, Miami started a
> cooperating witness program.
>
> What this allowed was for people who
> wanted to testify, it gave them a separate
> category than confidential informant.  A
> confidential informant is someone who does
> not want to testify.
>
> In 1989 the Miami Divison started this
> cooperating witness program.
>
> In 1989 Manual Sanchez came into the
> cooperating witness program for purposes of
> FBI Miami.

(*See* Pl. Memo., App. at 50.)  It is well-settled that the
government may withhold information pursuant to Exemption 7(D)
only if the confidential informant has an **expectation** that the
information will be kept confidential.  *U.S. Dep't of Justice v.
Landano*, 508 U.S. 165, 174 (1993).  Once Mr. Sanchez gave up his
status as a "confidential informant," he no longer could have
had any expectation of confidentiality once he agreed to become
a cooperating witness.

Defendant attempts to downplay Special Agent Flynn's admission by arguing that "Exemption 7(D) protection is not waived when a confidential source testifies in court." (Def. Reply at 17 (citing *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) and *Parker v. U.S. Dep't of Justice*, 934 F.2d 375, 379-81 (D.C. Cir. 1991)).) First, those cases addressed the question of whether a source waives his or her confidentiality simply by testifying in open court. Plaintiff, however, is not claiming that Mr. Sanchez automatically or unintentionally waived his confidential status when he testified. Rather, Special Agent Flynn's testimony demonstrates that Mr. Sanchez consciously and willingly gave up his confidential status in order to become eligible for additional payments. Because Mr. Sanchez was told by the government that he would not longer be considered a "confidential informant" once he decided to testify, he could not have had an expectation that his information would be kept confidential as contemplated by Exemption 7(D). *See Landano*, 508 U.S. at 174.

Second, *Davis* and *Parker* concerned the government's right to withhold "information **furnished by** a confidential source not actually revealed in public." *Parker*, 934 F.2d at 379-80 (emphasis added). In *Davis*, for example, the plaintiff sought disclosure of the tape recordings made by the FBI with the help of its informant and two undercover agents during the criminal

investigation of a mafia boss. *Davis*, 968 F.2d at 1278. And in *Parker*, the plaintiff sought "to discover whether any of the confidential informants whose identities are being protected by the FBI pursuant to Exemption 7(D) are also witnesses who testified against [him] at his criminal trial," and claimed that the confidential sources "'waived' the FBI's right to withhold the informants' identities and the information they provided" by testifying at trial. *Parker*, 934 F.2d at 377-79.

In this case, by contrast, Plaintiff is not seeking the information that Mr. Sanchez provided about the targets of the FBI's investigation; rather, Plaintiff has requested information on Mr. Sanchez's relationship with the FBI, including information concerning the government's misconduct during the course of that relationship. Moreover, much of the information sought by Mr. Hidalgo has already been made public in one form or another, including the fact that Mr. Sanchez received regular payments from Defendant, the amounts of those payments, and the fact that Mr. Sanchez has been arrested numerous times. As he pointed out in his Cross-Motion and Opposition, Plaintiff is merely seeking to confirm the accuracy of that information. For these reasons, *Parker* and *Davis* are inapplicable.

## III. DEFENDANT'S ARGUMENT FOR THE APPLICATION OF EXEMPTION 7(A) DEFIES LOGIC AND MISREPRESENTS CASE LAW.

As Plaintiff explained in his Cross-Motion and Opposition, Exemption 7(A) cannot apply here because sworn testimony indicates that the investigation involving Mr. Sanchez has

ended.  (*See* Pl. Memo. at 23, App. at 45-46, 52-53, 59-65.)  In
its reply and the attached declaration of Special Agent Rodney
Cortes, Defendant asserts that the VESTRAC investigation is
active and ongoing.  (Def. Reply at 3-4.)  In so doing,
Defendant dismisses Plaintiff's evidence that the investigation
in which Sanchez participation has closed with no more than a
self-interested, conclusory statement to counteract Plaintiff's
evidence.

Testimony cited by Plaintiff indicates that the
investigation involving Mr. Sanchez — Manny's Marine — has been
closed for over a decade.  (*See* Pl. Memo. at 5-6, 23.)  When
that operation ended, Mr. Sanchez stopped receiving his regular
funding as an informant. (*Id.*, App. at 45-46.)  Closing Mr.
Sanchez's file at that time makes sense.  Once Mr. Sanchez had
started testifying, he ceased to be valuable to any
investigation, Manny's Marine or otherwise, as a confidential
informant.  Thus, there was no reason to keep that investigation
open at that time.  If the government was concerned about the
need to preserve Mr. Sanchez's testimony for future proceedings
in any way related to the investigation in which he
participated, *why did it close his file*?

Defendant also implies that VESTRAC is much broader than
Manny's Marine by claiming that "Operation Vestrac remains
open." (Cortes Decl. ¶ 6.)  But if "Operation Vestrac" is not

synonymous with "Manny's Marine," the investigation appears to have no meaningful limit.  Taken to its logical end, Defendant's argument would require that this Court prohibit the disclosure of information to FOIA plaintiffs seeking any information in any way related to investigations of drug trafficking in Southern Florida so long as someone in the FBI is investigating drug trafficking in that area.  Such an overreading of Exemption 7(A) would defeat the purpose of FOIA and render the statute impotent with respect to the FBI.[3]  Simply because one investigation was part of a long-term strategic effort, the ongoing existence of that effort does not mean that the specific investigation has not closed.

The cases Defendant cites do not come close to supporting its propositions.  For example, *Long v. Department of Justice* addressed withholding only certain narrow pieces of information under Exemption 7(A), such as project category codes and the "criminal lead charge."  450 F. Supp. 2d 42, 73-74 (D.D.C. 2006) ("The 'criminal lead charge' field identifies the principal charge of an investigation or prosecution by the title and section number — and sometimes the subsection — of the United

---

[3]    Moreover, the insufficiency of Defendant's *Vaughn* Index is proven by its allegations that Plaintiff may have misinterpreted the materials available in the public domain.  Due to Defendant's obfuscatory tactics, Plaintiff is forced to rely on what materials are available, rather than a detailed, legally-sufficient *Vaughn* Index. *See infra* Section IV.

States Code."). The defendant in that case argued that information such as the charges sought on subjects of investigations could be used along with geographic information to determine who might be under investigation. With respect to program categories, the defendant sought to withhold the codes as they reflected the type of criminal activity being investigated. These items were narrow, specific types of information that had a demonstrable relationship to interference with a demonstrably ongoing investigation. Defendant, on the other hand, attempts to withhold virtually ***each and every piece of information in every document in the entire file of a former witness*** on the basis of exemption 7(A). (*See* Hardy Decl. ¶¶ 44-46.) Even where the items for which withholding was requested were so narrow, the *Long* court held that the defendant had not justified withholding the criminal lead charges or any of the program categories other than those related to terrorism investigations. *Long*, 450 F. Supp. 2d at 76-77.

The second case Defendant cites in his reply in support of withholding the file under exemption 7(A), *Bevis v. Department of State*, states than an agency must establish categories that "allow[] the court to trace a rational link between the nature of the document and the alleged likely interference[.]" 801 F.2d 1386, 1389 (D.C. Cir. 1986)(citing *Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 789 F.2d 64, 67 (D.C. Cir.

17

1986)).  Defendant has not provided such functional, meaningful
categories for the vast majority of the documents it seeks to
withhold, including those documents which appear on one of the
three forms that are only described in terms of total number.

## IV.  DEFENDANT HAS FAILED TO MEET ITS OBLIGATION TO PROVIDE A MEANINGFUL *VAUGHN* INDEX AND HAS MADE NO EFFORT TO SEGREGATE INFORMATION OR PROPERLY CATEGORIZE THE DOCUMENTS IN THE FILE.

Defendant's *Vaughn* Index fails to provide the level of
specificity required to assess the validity of Defendant's
claims of exemptions.  Oddly, in support of its argument that
the declaration and charts form a sufficient *Vaughn* Index,
Defendant cites *Hornbeck Offshore Transportation v. U.S. Coast
Guard*, No. 04-1724, 2006 WL 696053, at *1 (D.D.C. Mar. 20,
2006).  Defendant cited this case for the proposition that "the
precise form" of the index is immaterial (Def. Reply at 20), but
ignored the fundamental holding of the case.  Far from
supporting Defendant's position, the District Court in *Hornbeck*
actually ruled in favor of the ***plaintiff***, and demanded that
Defendant provide the plaintiff with a new and more detailed
*Vaughn* Index.  *Hornbeck* at *22.  The court held that the "paltry
level of detail about the actual content of these documents"
left the Court "with very little other than supposition and
inference upon which to base its analysis" of the Defendant's

18

claims for exemptions.[4]  *Id*. at *19.  The *Hornbeck* court noted the "sparse, Carver-esque minimalism of the *Vaughn* Index" and found it insufficient. *Id*. at *20, *22.

Such is precisely the case here:  Defendant's *Vaughn* Index is similarly sparse, providing no further information about the 2,169 pages of Forms represented in the file beyond what the forms are for.  In its textual explanation, Defendant asserts that each and every piece of each and every document in the file could enable drug traffickers to "critically analyze the information in the documents pertinent to the investigation of themselves" (Hardy Decl. ¶ 47), yet provides no categories of information that could demonstrate, pursuant to 7(A), that such "critical[] analys[is]" would be possible.

Defendant has attempted to create the appearance of a complete index by putting certain information in a chart and other information in paragraphs of the Hardy Declaration. Defendant, however, does not go far enough in either form to meet the *Vaughn* requirements.  In particular, Defendant makes two extremely broad statements: (1) that the entire file can be withheld under exemptions 6, 7(A), and 7(C); and (2) that every Form 302, 794 or 209 is entirely exempted under FOIA because of the mere purpose of the form.  In so doing, Defendant has

---

[4]    *Hornbeck* addresses the sufficiency of a *Vaughn* index in the context of Exemption 5 — the deliberative process exemption.

guaranteed that neither the Plaintiff nor the Court will be able to make a reasoned assessment as to the propriety of Defendant's claimed exemptions.[5]  To accept the assumption that no form containing the contents of an informant interview could possibly contain segregable information — especially considering how much of the information is in the public domain — would eviscerate the high standard of the segregability requirement.  *See, e.g.*, *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)(segregable information must be disclosed unless "inextricably intertwined").  These forms

---

[5]    Defendant's aversion to the perfectly consistent and in any event alternative arguments presented in Plaintiff's Cross-Motion with respect to Exemptions 2 and 7(E) exemplifies its failure to understand its segregability obligations.   In Defendant's Reply, it argues that because certain information could fall within the scope of Plaintiff's request, Defendant is entitled to withhold certain categories of information under certain exemptions.  (Def. Reply at 18-19.)  This is true.  Defendant, however, does not appear to have made any effort to isolate those bits of information that fall into the categories it enumerated for exemption under 2 and 7(E).  Moreover, it is in no way "in contradiction" to argue that certain other information withheld under this exemption has been made public.  Indeed, as the transcripts provided with the Plaintiff's Cross-Motion note, some of the exact information Plaintiff seeks has been disclosed in open court.  (*See* Pl. Memo. at 31, App. at 59-65.)  Finally, Defendant's lack of meaningful functional categories renders its allegations of potential risks of circumvention worthless.  Having failed to place the documents in meaningful functional categories — and indeed, referring to the bulk of documents only by their form type — Defendant expects that its blanket assertions of risk can apply to each document in the file, a position explicitly rejected in this Circuit.  *See, e.g.*, *Hornbeck Offshore Transp. v. U.S. Coast Guard*, No. 04-1724, 2006 WL 696053, at *1 (D.D.C. Mar. 20, 2006) (requiring meaningful functional categories in *Vaughn* Index).

comprise the bulk of the file, or 2,169 pages.  Only 595 pages of the 2,993 responsive documents are listed by Bates-stamp number with an individual, though often cryptic, description.  (*See* Def. Memo. at Ex. G.)

Moreover, Defendant still fails to account for over **two hundred pages** of the responsive file in any way in its *Vaughn* Index.  Defendant claimed to have found 2,993 pages of responsive documents, yet only 2,764 are accounted for in the Declaration and chart.[6]  Even if one includes the documents that are referenced only by their form type, that leaves 228 pages unaccounted for in any way.

**V.    DEFENDANT HAS NOT ADEQUATELY ADDRESSED PLAINTIFF'S REQUEST FOR *IN CAMERA* REVIEW.**

Plaintiff argued in his Cross-Motion and Opposition that

---

[6]    Pages were counted using the scant information provided in the index and Hardy Declaration.  The form counts were calculated using the lump sum number given for each section in the MM File.  Presented with no information whether the numbers represent pages or number of forms, they are assumed to be pages.  The pages represented by the documents specifically listed in the chart were tallied using the Bates stamp number ranges that were given for each document, then totaled for each section.  Since the Bates stamp numbers were not in sequence, with some Bates stamp ranges missing, only Bates number ranges presented on the index were counted.  Where Defendant indicated that pages were removed because they were duplicates, it is assumed that the missing pages were not simply duplicates of other entries.  Adding up the page numbers for each sections, we calculated 72 pages of FD-794 forms, 1025 pages of FD-302 forms, 1,072 pages of FD-209 forms, and 595 pages of Bates-labeled documents for a total of 2,764 pages.  2,993 total pages minus 2,764 pages, minus the one page partially disclosed, yields a total of 228 pages not accounted for.

the Court should review the non-disclosed records *in camera* and make its own determination as to whether Defendant has properly withheld the responsive documents.  Defendant claims that Plaintiff is "engag[ing] in desperate rhetoric," but makes little effort to respond to the merits of Plaintiff's argument.

First, as discussed in section IV, *supra*, Defendant offers no support for its claim that its *Vaughn* Index is sufficiently detailed.  A government agency is obliged to "'itemize[] each item withheld, the exemptions claimed for that item, **and the reasons why the exemption applies to that item**.'"  *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997-98 (D.C. Cir. 1998) (quoting *Lykins v. DOJ*, 725 F.2d 1455, 1463 (D.C. Cir. 1984) (emphasis added)).  Defendant's entire response to Plaintiff's argument that the *Vaughn* Index does not meet this standard is as follows:

> The Hardy Declaration and its attached charts together comprise one very **clear** *Vaughn* declaration, which satisfies defendant's obligation. . . . The Hardy Declaration provides an accounting for, and a description of, the types of records found in the file (including the frequently appearing 302s, 209s, and 794s). . . . The body of the declaration also explains that the non-frequently appearing responsive documents are indexed by number and described in the charts. . . . The Hardy Declaration **clearly** justifies the application of the exemptions to the various responsive records.

(Def. Reply at 20 (emphases added); *see also id.* at 22 ("the Hardy Declaration and its attached index comprise one document focused clearly and in good faith towards the satisfaction of defendant's *Vaughn* obligation").)

Simply stating that the *Vaughn* Index "clearly" satisfies the

legal standard does not make it so, and Defendant has provided no specific evidence or examples to support its claim.  Neither the *Vaughn* Index nor the Hardy declaration explain "the reasons why the exemption applies to [each] item," *Lykins*, 725 F.2d at 1463, and therefore do not provide sufficient detail to permit the Court to conduct a meaningful review of the claimed exemptions. Defendant also has not accounted for over 200 documents that do not appear to be listed anywhere in the index.

Second, in response to Plaintiff's argument that the FBI did not conduct an adequate search for responsive documents in *Hidalgo II*, Defendant argues that, because "[t]his Court . . . found the search in that case to be reasonable . . . defendant need not address that search here."  (Def. Reply at 23.) Defendant, however, makes no attempt to address the evidence that indicates that its search at FBI headquarters should have turned up a significant number of responsive documents, including the 62 entries in the *Vaughn* Index documenting communications between the Miami Field Office and FBI Headquarters and Special Agent Flynn's testimony indicating that he was required to communicate regularly with FBI headquarters. (*See* Pl. Memo. at 33-34.)  That evidence contradicts Defendant's earlier claims that it did not have any responsive documents at FBI Headquarters and ***was not available*** to this Court when it ruled that Defendant's search was adequate in *Hidalgo II*.

Because the Court made its decision without the benefit of that information, Defendant cannot rely on the Court's order now without offering some explanation for the concerns raised by Plaintiff.

Third, Defendant makes no effort at all to respond to Plaintiff's attempted to address the FBI's failure to search its database using the name "Sanchez, Manuel" or the internal file number provided by Plaintiff.  (*Id.* at 34-35.)

In sum, Plaintiff has provided the Court with ample evidence that the *Vaughn* Index is not sufficiently detailed and that Defendant has acted in bad faith.  *In camera* review is therefore appropriate pursuant to 5 U.S.C. § 552(a)(4)(B).

## Conclusion

For the reasons set forth above, Mr. Hidalgo respectfully requests that Defendant's Motion for Summary Judgment be denied and that Plaintiff's Cross-Motion for Summary Judgment be granted.

Respectfully Submitted,

s/ Robert-Paul Sagner
_____
Robert-Paul Sagner
(DC Bar # 470219)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C.  20006

Dated:  September 13, 2007